Robert Tauler (SBN 241964)
rtauler@taulersmith.com
Valerie Saryan (SBN 297115)
vsaryan@taulersmith.com
TAULER SMITH LLP
626 Wilshire Blvd., Suite 510
Los Angeles, California 90017
Tel. (213) 927-9270

*Attorneys for Defendants*
Kyle Oreffice and Give Back Media, LLC

THE UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| ARYA TOUFANIAN, an individual,<br><br>　　　Plaintiff,<br><br>　　　v.<br><br>KYLE OREFFICE, an individual, GIVE BACK MEDIA, LLC, a Georgia limited liability company; and DOES 1-10,<br><br>　　　Defendants. | Case No. 2:19-cv-07934-DMG-SS<br><br>**NOTICE OF DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S COMPLAINT PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16 AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:　　　　July 10, 2020<br>Time:　　　　9:30 a.m.<br>Courtroom:　8C<br><br>Hon. Dolly M. Gee |

**TO PLAINTIFF ARYA TOUFANIAN AND HIS COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on July 10, 2020, at 9:30 a.m. or as soon thereafter as counsel may be heard, in Courtroom 8C of the United States District Court for the Central District of California, located at 350 West 1st Street, Los Angeles, California 90012, the Honorable Dolly M. Gee presiding, Defendants Kyle Oreffice and Give Back Media, LLC will and hereby do move the Court for an order striking Plaintiff's Complaint asserted against Defendants Kyle Oreffice and Give Back Media, LLC pursuant to California Code of Civil Procedure § 425.16, and awarding Defendants Kyle Oreffice and Give Back Media, LLC their attorney's fees and costs, in the amount of $22,777.50.

The Motion is based on this Notice and Motion, the attached Memorandum of Points and Authorities, the Declaration of Robert Tauler, the Declaration of Kyle Oreffice, and exhibits filed concurrently herewith, all of the pleadings, and records in this proceeding, all other matters of which the Court may take judicial notice, and any argument or evidence that may be presented to or considered by the Court prior to its ruling.

Dated: June 10, 2020          **TAULER SMITH LLP**

By: *s/Robert Tauler*
Robert Tauler, Esq.

– 1 –

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. iii

MEMORANDUM OF POINTS AND AUTHORITIES ................................. 1

I. INTRODUCTION ........................................................................................... 1

II. STATEMENT OF FACTS ............................................................................ 2

    A. Mr. Toufanian's History ........................................................................ 2

    B. Defendants' Blog Post ............................................................................ 3

    C. Mr. Toufanian Threatens Defendant to Silence Him With Costly Litigation ....... 4

III. LEGAL STANDARD .................................................................................. 5

    A. California's Anti-SLAPP Statute ......................................................... 5

    B. Process For Evaluating An Anti-SLAPP Motion ............................. 6

IV. THE COURT SHOULD DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO CCP § 425.16 ................................................................... 7

    A. Plaintiff's Suit Arises from Acts In Furtherance of Defendants' Constitutional Right To Free Speech ........................................ 7

    B. Plaintiff Cannot Meet His Burden to Prove His Claims Against Defendants .... 10

        1. Plaintiff Cannot Show a Reasonable Probability of Prevailing on the Merits of His Libel Per Se Claim Against Defendants ................ 11

            a. Plaintiff Fails to Identify Any False or Defamatory Statements .............. 11

            b. Plaintiff Cannot Meet the Heightened Standard of Proof that Requires a Showing of Actual Malice When Plaintiff is a Public Figure ...... 13

                i. Mr. Toufanian is a Public Figure for Purposes of this Litigation ....... 14

            c. Plaintiff Cannot Prove Defendants' Statements Proximately Caused Damages ...... 16

        2. Plaintiff Cannot Show a Reasonable Probability of Prevailing on His Libel Per Quod Claim Against Defendants ................. 17

3. Plaintiff Cannot Show a Reasonable Probability of Prevailing on His Claim for Violations of California Business & Professions Code § 17200, *et. seq.* .... 18

V. LEAVE TO AMEND SHOULD BE DENIED ........................................................ 19

VI. DEFENDANTS ARE ENTITLED TO $22,777.50 IN ATTORNEY'S FEES AND COSTS ..................................................................................................................... 19

VII. CONCLUSION ..................................................................................................... 20

# TABLE OF AUTHORITIES

Cases

*Ampex Corp. v. Cargle* (App. 1 Dist. 2005) 27 Cal.Rptr.3d 863, 128 Cal.App.4th 1569 ............................................................................................... 9

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ....................................................................... 14

*Arya Toufanian v. Jerry Shukes*, Superior Court of the District of Columbia; Case No. 2020-SC3-000003 (January 2, 2020)....................................... 16

*Arya Toufanian v. Michael Wrubel*, Superior Court of the District of Columbia; Case No. 2020-SC3-000005 (January 2, 2020)....................................... 16

*Batzel v. Smith*, 333 F.3d 1018 (9th Cir. 2003) ........................................... 6

*Braun v. Chronicle Publishing Co.*, 52 Cal. App. 4th 1036 (1997) .............................. 6

*Breazeale v. Victim Servs., Inc.*, 878 F.3d 759 (9th Cir. 2017)......................... 6

*Briganti v. Chow*, 42 Cal. App. 5th 504 (Ct. App. 2019), *reh'g denied* (Dec. 11, 2019) ...................................................................................... 9

*Californians for Disability Rights v. Mervyn's, LLC,* 39 Cal. 4th 223, 138 P.3d 207 (2006) ............................................................................ 18

*Cepeda v. Cowles Magazines and Broadcasting, Inc.* (9th Cir. 1968) 392 F.2d 417, 419, *cert. denied* 393 U.S. 840, 89 S.Ct. 117, 21 L.Ed.2d 110 ........................ 14

*Chaker v. Mateo* (App. 4 Dist. 2012) 147 Cal.Rptr.3d 496, 209 Cal.App.4th 1138......9

*City of Cotati v. Cashman*, 29 Cal. 4th 69 (2002) ......................................... 8

*Clayworth v. Pfizer, Inc.*, 49 Cal.4th 758, 111 Cal.Rptr.3d 666, 233 P.3d 1066 (2010)...................................................................................... 18

*ComputerXpress, Inc. v. Jackson* (App. 4 Dist. 2001) 113 Cal.Rptr. 2d 625, 93 Cal. App.4th 993 ................................................................................... 13

*Contreras v. Dowling* (2016) 5 Cal.App.5th 394 ........................................... 19

– iii –

*Cummins v. Lollar* (C.D. Cal., Apr. 30, 2013, No. CV1108081-DMG-MANX)
    2013 WL 12123771 ........................................................................... 10

*D.C. v. R.R.,* 106 Cal.Rptr.3d 399, 182 Cal.App.4th 1190 (App. 2 Dist. 2010)............9

*Du Charme v. Int'l Bhd. of Elec. Workers, Local 45*, 110 Cal. App. 4th 107,
    1 Cal. Rptr. 3d 501 (2003)................................................................... 10

*Fresno Motors, LLC v. Mercedes Benz USA, LLC* 771 F3d
    1119 (9th Cir. 2014)............................................................................ 19

*Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 94 S. Ct. 2997, 3008,
    41 L. Ed. 2d 789 (1974) ........................................................... 2, 7, 14, 15

*Glob. Telemedia Int'l, Inc. v. Doe 1*, 132 F. Supp. 2d 1261
    (C.D. Cal. 2001)................................................................................ 12

*Hawran v. Hixson,* 209 Cal.App.4th 256, 147 Cal.Rptr.3d 88 (2012) ........................9

*Hecimovich v. Encinal School Parent Teacher Organization* (App. 1 Dist. 2012)
    137 Cal.Rptr.3d 455, 203 Cal.App.4th 450 ............................................... 8

*Hilton v. Hallmark Cards*, 599 F.3d 894 (9th Cir. 2009) ............................................7

*Jackson v. Mayweather,* 10 Cal. App. 5th 1240, 217 Cal. Rptr. 3d 234 (Ct. App.
    2017), *as modified* (Apr. 19, 2017*)*........................................................... 19

*Ketchum v. Moses*, 24 Cal.4th 1122, 104 Cal. Rptr. 2d 377, 17 P.3d 735
    (2001) ............................................................................................ 19

*Khai v. Cty. of Los Angeles*, 730 F. App'x 408, 411 (9th Cir. 2018) ........................ 19

*Korea Supply Co. v. Lockheed Martin Corp*., 29 Cal. 4th 1134,
    63 P.3d 937(2003).............................................................................. 19

*Makaeff v. Trump University, LLC* (9th Cir. 2013) 715 F.3d 254.................... 1, 6, 7, 8

*Marques v. Fed. Home Loan Mortg. Corp.,* No. 12CV1873 - IEG (MDD),
    2013 WL 12114627 (S.D. Cal. Aug. 16, 2013) ....................................... 18

*Martin v. Inland Empire Utilities Agency*, 198 Cal.App. 4th 611 (2011) .................. 19

– iv –

*Medical Marijuana, Inc. v. ProjectCBD.com,* 46 Cal.App. 5th 869 (2020).... 11, 12, 18

*Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832 (9th Cir. 2001)..................................7

*Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590 (9th Cir. 2010)..................................6

*New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d
    686 (1964)..................................................................................... 14

*Okorie v. Los Angeles Unified School Dist.*, 14 Cal. App. 5th 574
    (2017) ......................................................................................... 7, 14

*Rosenberg v. J.C. Penney Co.,* 30 Cal.App.2d 609 (1939).......................................... 11

*Simmons v. Allstate Ins. Co.,* 92 Cal. App. 4th 1068,
    112 Cal. Rptr. 2d 397 (2001)...................................................................... 19

*Slaughter v. Friedman,* 32 Cal.3d 149, 185 Cal.Rptr. 244,
    649 P.2d 886 (1982)............................................................................... 17

*U.S. ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963
    (9th Cir. 1999).................................................................................... 6

*Wilbanks v. Wolk*, 121 Cal.App.4th 883 (2004) ...................................................... 8, 9

*Wong v. Jing,* 189 Cal.App.4th 1354, 117 Cal.Rptr.3d 747 (2010) ............................ 11

Statutes

Cal. Civil Code § 45 ................................................................................ 11
Cal. Civil Proc. Code § 425.16(c)(1) ............................................................ 19
Cal. Civil Code § 45a ............................................................................... 17
Cal. Code Civ. Proc. § 425.16(a) ................................................................. 6
Cal. Code Civ. Proc. § 425.16(b)(1) ............................................................ 6
Cal. Code Civ. Proc. § 425.16(c)(1).............................................................. 7
Cal. Code Civ. Proc. § 425.16(e)(3)-(4).......................................................... 7
Cal. Civil Code, § 48a, subd. 4 (b)............................................................... 17

### MEMORANDUM OF POINTS AND AUTHORITIES

Defendants Kyle Oreffice and Give Back Media, LLC (collectively "Defendants") bring this special motion to strike pursuant to California Code of Civil Procedure § 425.16 to strike Plaintiff Arya Toufanian's ("Plaintiff") Complaint ("Complaint").

## I. INTRODUCTION.

Plaintiff has gained national attention for the audaciousness of his business exploits, and the wanton nature of his public behavior. Most recently, *The New York Times* published an exposé of Mr. Toufanian's business practices, dubbing him a "viral party kingpin" who promised his customers fame "then silenced them with threats." The present Complaint, founded entirely on allegations that Defendants cautioned consumers regarding the very same business practices widely reported on, is the latest extension of Mr. Toufanian's pattern of conduct. Indeed, Mr. Toufanian has made no secret of the fact that his intent with this lawsuit is to "bury [Defendants] "in legal fees" and even going so far as to threaten legal action against Defendant's family members that bear no relation to the statements in dispute.

Indeed, it is difficult to conceive of circumstances more worthy of the protections of California's anti-SLAPP law than those presented by the pleadings. The Complaint is founded entirely on allegations that Defendants exercised their constitutionally-protected right of free speech regarding consumer fraud issues that have already gained national attention in various publications, presumptively making the alleged statements a matter of widespread public interest. *Makeff v. Trump University, LLC* (9th Cir. 2013) 715 F.3d 254, 262 (Statements warning consumers of fraudulent or deceptive business practices constitute a topic of widespread public interest, so long as they are provided in the context of information helpful to consumers.). The Complaint should also be dismissed because each claim is unlikely to succeed on the merits. Because Plaintiff is a public figure, at the very least for the limited purpose of the public controversy over his business practices, Plaintiff will

– 1 –

1   need to show clear and convincing evidence that Defendants made the alleged

2   defamatory statements at issue with actual malice. *Gertz v. Robert Welch, Inc.,* 418

3   U.S. 323, 342, 94 S. Ct. 2997, 3008, 41 L. Ed. 2d 789 (1974). Plaintiff will be unable

4   to do so, and his remaining claim for violation of California Unfair Competition Law

5   will fall with the defamation claims it is predicated upon.

6          Accordingly, the Court should dismiss the Complaint and order Plaintiff to pay

7   Defendants' reasonable attorneys' fees in the amount of $22,777.50.

8          Application of the anti-SLAPP statute is necessary in this case to protect

9   Defendants' First Amendment rights, to deter Mr. Toufanian's menacing conduct, to

10   prevent future misuse of the judicial system, and most importantly, to support voices

11   who seek to protect the public from fraudulent business practices.

12   **II.    STATEMENT OF FACTS.**

13          The Complaint contains three causes of action for (1) libel per se; (2) liber per

14   quod; and (3) unfair business practices based on Defendants' alleged publication of

15   articles relating to Plaintiff's business practices, including that Plaintiff "scams

16   innocent investors" through "hyped up schemes." (Complaint ¶ 13.)

17          **A.    <u>Mr. Toufanian's History.</u>**

18          Mr. Toufanian first gained national attention as a college student for his first

19   business venture *I'm Shmacked*, which was, and is "hugely popular among high school

20   and college students" according to The New York Times. (Tauler Decl. ¶ 8, Ex. G.) *I'm*

21   *Schmacked's* business involved hosting and filming of raucous college parties with

22   "over the top antics." *Id.* Mr. Toufanian gained public fame as the face of *I'm*

23   *Schmacked*, posting YouTube videos (garnering over 25 million views) and developing

24   a large following on social media. (Tauler Decl. ¶ 6; Ex. E.)

25          Widespread media coverage of *I'm Shmacked* began with The New York Times

26   in 2012, and Business Insider likewise published a feature in 2014. (Tauler Decl. ¶ 6;

27   Ex. E.) As the face of the *I'm Shmacked* brand, Mr. Toufanian himself gained publicity

28

– 2 –

for his provocative behavior and antics on social media, landing him articles published in Huffington Post, amongst others. (Tauler Decl. ¶ 7; Ex. F.)

Mr. Toufanian used his fame and notoriety from his *I'm Shmacked* to start new business ventures such as Sensa Stocks and AryaStocks, offering stock trading services to consumers. Much like *I'm Schmacked*, Sensa Stocks and Arya Stocks (the "Subject Companies") garnered numerous complaints from customers who stated publicly that they felt defrauded by Mr. Toufanian. Websites and social media accounts in turn published articles about Mr. Toufanian and the Subject Companies. Numerous victims warned the public about Mr. Toufanian's business practices, leading to Instagram, a popular social media platform, to shut down Mr. Toufanian's accounts.

Mr. Toufanian gained even more notoriety after numerous websites and social media accounts also published pieces exposing Mr. Toufanian in more depth. Mr. Toufanian's business practices reached a tipping point on November 19, 2019 when The New York Times published an exposé on Mr. Toufanian exposing the Subject Companies and his unscrupulous practices, namely to "threaten with lawsuits and intimidate into silence." (Tauler Decl. ¶ 8, Ex. G.)

## B.   Defendants' Blog Post.

Defendant Kyle Oreffice is just one of the many individuals to speak out online against Mr. Toufanian and his business practices in an effort to warn the public. At issue here is Mr. Oreffice's publication of one blog post on his company's website, quantumstocktrading.com, entitled "The Douche of Wall Street: How Arya Toufanian Scams Innocent Investors." (the "Blog Post") (Attached as Exhibit A to the Complaint.)[1]

The Blog Post describes how Plaintiff was engaged in a "scam" with a company called *AryaStocks*, including details about the pricing packages, the contents of *AryaStocks* and why the company is engaged in fraudulent activity. The Blog Post

---

[1] Hyperlinks to the Blog Post were also posted to Quantum Stock Trading's Facebook and Instagram accounts.

references guidance from the Securities and Exchange Commission, and asserts that the contents were published "to protect the honest, hard-working investors who have decided to build a brighter future for themselves through financial education."

Defendants' Blog Post was published to spread awareness of overpriced equity trading schemes, and to warn consumers of Mr. Toufanian's business practices. (See Ex. A to Complaint.)

### C. **Mr. Toufanian Threatens Defendant to Silence Him With Costly Litigation.**

Mr. Toufanian has made no secret of the fact that his intent with this lawsuit was to threaten costly litigation. Prior to Plaintiff's filing of the Complaint, Mr. Toufanian bombarded Defendant Mr. Orrefice with objectively outrageous online messages threatening him (and his mother) with costly litigation for publishing the Blog Post and threats to silence him.

Plaintiff messaged Defendant, "I don't mind spending $20k to teach you a lesson." Plaintiff went on to say, "I'll bury you in legal fees" and "You're gonna need to sell more packages to pay lawyer fees so keep it up." (Oreffice Decl. ¶ 6, Ex. E.)

> I don't mind spending $20k to teach you a lesson

> You're gonna need to sell more packages to pay lawyer fees so keep it up

Mr. Toufanian threatened "$30-$40k" will "go quick in court paying lawyer fees," and touted, "My last lawsuit burned $80,000 first month :) be prepared kiddo." (Oreffice Decl. ¶ 2, Ex. A.)

> Your mom I can serve at her office. Monday will be fun. I hope quantum made you $30-40k. It'll go quick in court paying lawyer fees

> My last lawsuit burned $80,000 first month :) be prepared kiddo

– 4 –

Mr. Toufanian even threatened financial ruin to Mr. Oreffice's mother, claiming he was "going to spend $10k…to sue your mom and yourself" claiming she will have to sell her house, and says, "I hope she likes LA, she'll be here soon for court." (Oreffice Decl. ¶ 4, Ex. C.)

> I'm going to spend $10k on Monday to sue your mom and yourself

> Your moms selling a 800k house lol

> I'll bury you in legal fees

> Monday morning hits it's game on kiddo

Mr. Toufanian also threatened Defendant with criminal claims by saying he's "dealing with police" proclaiming, "Hope you like cops at your door" in hopes of scaring Mr. Oreffice into silence. (Oreffice Decl. ¶ 6, Ex. E.)

> I can't wait for Monday

> Hope you like cops at your door

## III.   LEGAL STANDARD.

### A.   California's Anti-SLAPP Statute.

In 1992, California enacted its Anti-SLAPP statute (California Code of Civil Procedure § 425.16), to allow early dismissal of lawsuits aimed at chilling the valid exercise of the constitutional rights to free speech and to petition for redress of grievances. *Breazeale v. Victim Servs., Inc.*, 878 F.3d 759, 764 (9th Cir. 2017); *Braun v. Chronicle Publishing Co.*, 52 Cal. App. 4th 1036, 1042 (1997).  "SLAPP" stands for strategic lawsuits against public participation. *See Batzel v. Smith*, 333 F.3d 1018, 1023–24 (9th Cir. 2003).

The Anti-SLAPP statute provides that:

"A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the

– 5 –

United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."

Cal. Code Civ. Proc. § 425.16(b)(1).

The Anti-SLAPP statute explicitly provides that it "shall be construed broadly." Cal. Code Civ. Proc. § 425.16(a). The Ninth Circuit has held that § 425.16 applies to state-law claims when those claims are adjudicated in federal court. *U.S. ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 970 (9th Cir. 1999).

### B.   **Process For Evaluating An Anti-SLAPP Motion.**

In considering an Anti-SLAPP motion, the court undertakes a two-part inquiry. *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 596 (9th Cir. 2010.) First, a defendant must make a prima facie showing that the plaintiff's suit "arises from an act in furtherance of the defendant's constitutional right to free speech." *Makaef v. Trump Univ., LLC*, 715 F.3d, 254, 261 (9th Cir. 2013). The defendant need not show that the plaintiff intended to chill his speech or "that any speech was actually chilled." *Mindys Cosmetics*, 611 F.3d at 596 (internal quotations omitted).

Once a defendant has made a prima facie showing, the burden shifts to the plaintiff to establish a "reasonable probability" that it will prevail on its claims in order for that claim to survive dismissal. Cal. Code Civ. Proc. § 425.16(b)(1); *Makaef v. Trump Univ., LLC*, 715 F.3d, 254, 261 (9th Cir. 2013). The plaintiff must demonstrate that the complaint is "legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." *Hilton v. Hallmark Cards*, 599 F.3d 894, 902 (9th Cir. 2009); *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 840 (9th Cir. 2001)(internal quotations omitted). The test is similar but not identical to the test for summary judgment. *Id*. However, when, as here, the Plaintiff is a public figure, the standard for the second part of the anti-SLAPP analysis rises to "clear and convincing evidence." *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 342, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974).

– 6 –

A defendant that prevails on an Anti-SLAPP motion shall be entitled to recover his or her attorney's fees and costs. Cal. Code Civ. Proc. § 425.16(c)(1).

## IV.   THE COURT SHOULD DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO CCP § 425.16.

Defendants' statements plainly arise from protected activity and Plaintiff is unlikely to succeed on his claims. As such, the Court should grant Defendants' Motion.

### A.   Plaintiff's Suit Arises from Acts In Furtherance of Defendants' Constitutional Right To Free Speech.

Defendants meet the first step of the two-part analysis set forth under CCP § 425.16 which requires a prima facie showing that Plaintiff's suit "arises from an act in furtherance of the defendant's constitutional right to free speech." *Makaef v. Trump Univ., LLC*, 715 F.3d at 261. Protected activities include "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest," and "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." Cal. Code Civ. Proc. § 425.16(e)(3)-(4).

To determine whether the defendant's actions arises from the categories of protected activity enumerated in California Code of Civil Procedure § 425.16(e), a court "examine[s] the principal thrust or gravamen of a plaintiff's cause of action." *Okorie v. Los Angeles Unified School Dist.*, 14 Cal. App. 5th 574, 586–87 (2017) (internal quotation marks and citation omitted). "In the anti-SLAPP context, the critical point is whether the plaintiff's cause of action itself was *based on* an act in furtherance of the defendant's right of petition or free speech." *City of Cotati v. Cashman*, 29 Cal. 4th 69, 78 (2002) (emphasis in original) (citations omitted). "Defamation," even if it were found to exist, can still be found to be protected activity under anti-SLAPP statute. *Hecimovich v. Encinal School Parent Teacher Organization* (App. 1 Dist. 2012) 137 Cal.Rptr.3d 455, 203 Cal.App.4th 450, *review denied*.

– 7 –

Here, the gravamen of the Complaint is Defendants' publication of a blog post on Defendants website (the "Blog Post"). The Blog Post warned consumers regarding Plaintiff's business practices, specifically, his practice of charging up-front fees to his customers for his services, failing to provide any services, and then refusing to pay back any funds when asked for refunds. (See Ex. A to Complaint.) Under California law, statements warning consumers of fraudulent or deceptive business practices constitute a topic of widespread public interest, so long as they are provided in the context of information helpful to consumers. *Makaeff v. Trump University, LLC,* 715 F.3d at 262 (defendant alerted consumers about Trump University in a newspaper article reporting Trump University's educational practices and business model after customers posted complaints on public Internet message boards regarding plaintiff's business practices.)

As in *Makaeff*, Defendants provided information to alert consumers of fraudulent business practices. Thus, the same result should bear: Defendants' statements are an issue of public interest since fraudulent business practices are an issue of public concern.

This result is buffered by *Wilbanks v. Wolk*, 121 Cal.App.4th 883 (2004).   In *Wolk*, a consumer advocate and expert on viatical settlements (arrangements in which dying persons sell their life insurance policies to investors to help pay for medical care and other expenses), posted negative comments on her website about a certain broker of such settlements. *Id*. at 499, 507. The California Court of Appeal held that the statements were protected activity under the anti-SLAPP statute because they were "consumer protection information" because *Wolk* identified the brokers she believed had engaged in unethical or questionable practices, and provided information for the purpose of aiding investors to choose between brokers. *Wilbanks v. Wolk*, 121 Cal. App. 4th 883, 899, 17 Cal. Rptr. 3d 497, 507 (2004).

As in *Wolk*, Mr. Oreffice identifies Plaintiff as being engaged in questionable practices and provides information that will aid prospective consumers.  Thus,

– 8 –

Defendants' article is protected activity under the anti-SLAPP statute because it is consumer protection information---specifically, statements made on a public forum protecting consumers from Plaintiff's business practices.[2]

Aside from the Blog Post, Plaintiff takes issue with Defendants' use of social media.[3] In *Briganti v. Chow*, 42 Cal. App. 5th 504 (Ct. App. 2019), *reh'g denied* (Dec. 11, 2019), the court held that alleged widespread, criminal identity theft is a matter of public interest and thus protected activity (regardless of whether the statements are true) where defendant published Facebook posts warning of plaintiff's "widespread pattern of identity theft and multi-level marketing scams, which…have ensnared tens of thousands of innocent victims" in the hopes of building mass awareness. *Id.* at 508. Like *Briganti*, here, Defendants' posted hyperlinks to the Blog Post on Facebook and Instagram to spread awareness and warning to the public of Plaintiff's business practices, which Defendants believe to have ensnared numerous victims. Under *Briganti*, Defendants' statements implicate an issue of public interest and therefore qualify as protected activity.

Finally, the statements about Plaintiff are considered of public interest because Plaintiff's business practices relate to a limited but definable portion of the public, and were made "in the context of an ongoing controversy, debate or discussion within that

[2] Websites accessible to the public are public forums for purposes of the anti-SLAPP. *D.C. v. R.R.* (App. 2 Dist. 2010) 106 Cal.Rptr.3d 399, 182 Cal.App.4th 1190, as modified, review denied. Web sites that are accessible free of charge to any member of the public where members of the public may read the views and information posted, and post their own opinions, meet the definition of a public forum for purposes of the anti-SLAPP statute. *Ampex Corp. v. Cargle* (App. 1 Dist. 2005) 27 Cal.Rptr.3d 863, 128 Cal.App.4th 1569, review withdrawn. Thus, the written statements are protected activity.

[3] Much like websites, statements posted on a social networking and on a website where members of the public could comment on the reliability and honesty of various providers of goods and services were made in a "public forum," as required for anti-SLAPP protection. *Chaker v. Mateo* (App. 4 Dist. 2012) 147 Cal.Rptr.3d 496, 209 Cal.App.4th 1138.

– 9 –

community." *Cummins v. Lollar* (C.D. Cal., Apr. 30, 2013, No. CV1108081-DMG-MANX) 2013 WL 12123771, at *8 (citing *Du Charme v. Int'l Bhd. of Elec. Workers, Local 45*, 110 Cal. App. 4th 107, 118, 1 Cal. Rptr. 3d 501 (2003)).

In *Cummins*, this Court found that "Anti-SLAPP protection was available even within a limited community, when the speech encouraged participation "in such a debate, discussion, or controversy." *Id*. Here, Defendants' Blog Post was at the very least published within a limited but definable portion of the public, namely consumers interested in equity trading services. *See Du Charme*, 110 Cal. App. 4th at 118 (defining "limited but definable" populations to include communities of interest such as a 3,000-member homeowner association and a 10,000-member union local). Further, the Blog Post was published to Defendants' social media accounts to encourage interested community members to participate in debate or discussion on the matter, during a time period when Mr. Toufanian's business practices were an ongoing topic of controversy, debate and discussion within the equity trading services community.

Based on the foregoing, Defendants meet their burden of proof that the Blog Post is protected activity under the Anti-SLAPP statute.

**B.**   **Plaintiff Cannot Meet His Burden to Prove His Claims Against Defendants.**

The second step of the two-part analysis under Section 425.16 requires Plaintiff to demonstrate that he is likely to prevail against Defendants on each of his claims. Plaintiff cannot meet his burden of proof that he will prevail on any one of his three claims alleged against Defendants for libel per se, libel per quod, and violations of unfair competition law.

**1.**   **Plaintiff Cannot Show a Reasonable Probability of Prevailing on the Merits of His Libel Per Se Claim Against Defendants.**

Libel per se is based in common law defamation, and thus relates to the standing and reputation of the businessman as distinct from the quality of his or her goods. Cf. *Rosenberg v. J.C. Penney Co.* (1939) 30 Cal.App.2d 609, 619–622. The elements of

– 10 –

a defamation claim are (1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes special damage. *Medical Marijuana, Inc. v. ProjectCBD.com* (2020) 46 Cal.App. 5th 869, 884. "Libel is a <u>false</u> and unprivileged publication by writing, printing … which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation.' " Cal. Civ. C. § 45; *Wong v. Jing* (2010) 189 Cal.App.4th 1354, 1369, 117 Cal.Rptr.3d 747.

### a. <u>Plaintiff Fails to Identify Any False or Defamatory Statements.</u>

In his Complaint, Plaintiff identifies the following statements published in Defendants' Blog Post as allegedly false and defamatory:

- "The owner of I'm Shmacked, Arya Toufanian, is certainly proficient at taking money from people over the internet through elaborate, hyped-up schemes." (Complaint 13.)

- "Furthermore, he [Plaintiff] has stolen content from free Discord servers and posted it in his paid Discord. The real icing on the cake, however, is the fact that he claims these are onetime charges – which numerous, numerous members have verified to be entirely false" (Complaint 13.)

- "Not only did Arya scam his 'students' by charging them thousands to set up a Shopify store (something anyone can do for free in less than 5 minutes), he went a step further by creating a pyramid scheme of scams in which his students (unbeknownst to them) were effectively scamming even more people!" (Complaint 13.)

- "Thinking like a real scammer, Arya decided to enter into the stock advice space with his @aryastocks program (formerly @stocks), in which he uses the influence of his I'm Shmacked account to pedal [sic] his 'exclusive' stock advice. The story of these scammy trading servers is long and illustrious. We owe it to the public to expose these elaborate schemes such as this, and have created our program Quantum Stocks with the goal of providing real, time-relevant, valuable trading information to our members. Arya is currently charging brand-new, unsuspecting investors up to $500 (previously up to $1000+) for access to a Discord server with virtually zero activity, with promises of stock scanners and helpful admins that are virtually non-existent. Each package, regardless of price, gets you access to

– 11 –

the same chat room… yep, you read that right: the $500 package is IDENTICAL to the $60 option. Furthermore, he has stolen content from free Discord servers and posted it in his paid Discord. The real icing on the cake, however, is the fact that he claims these are one-time charges – which numerous, numerous members have verified to be entirely false, proving that Arya is unresponsive to even the most basic of skepticisms." (Complaint 13.)

"Because [a defamatory] statement must contain a provable falsehood, courts distinguish between statements of fact and statements of opinion for purposes of defamation liability. *Medical Marijuana, Inc. v. ProjectCBD.com* (2020) 46 Cal.App.5th 869, 884.  First, Defendants' statement that Mr. Toufanian is "proficient at taking money from people over the internet" is a statement of opinion that Plaintiff is skilled at generating customers for his various online businesses, including *I'm Schmacked*.

Second, Defendants' statement regarding *I'm Schmacked* that Plaintiff: "…went a step further by creating a pyramid scheme of scams in which his students (unbeknownst to them) were effectively scamming even more people!" is also an opinion (not a fact) because the "general tone and context of these messages strongly suggest that they are the opinions of the posters." *Glob. Telemedia Int'l, Inc. v. Doe 1*, 132 F. Supp. 2d 1261, 1267 (C.D. Cal. 2001) (Internet postings are opinion where statements are full of hyperbole, invective, short-hand phrases and language is not formal or polished as typically found in fact-based documents, such as corporate press releases or SEC filings.).

Third, Defendants' statements that Plaintiff overcharges his clients for services that are offered elsewhere for free are also statements of opinion, not fact. *See ComputerXpress, Inc. v. Jackson* (App. 4 Dist. 2001) 113 Cal.Rptr. 2d 625, 93 Cal. App.4th 993 (Anti-SLAPP motion granted where plaintiff fails to show probability of prevailing on libel claim arising from Internet postings where tone and content of most postings identified them as statements of opinion rather than fact, postings were

hyperbolic and informal, they were replete with explicit statements of opinion, some were too vague to be taken as fact, and there was no evidence that any statements of fact were false.)

Fourth, Defendants' statements are critical of Plaintiff's business practices are not defamatory. For example, the statements that assert Plaintiff's equity trading business is a "scam" are not defamatory. *See ComputerXpress, Inc. v. Jackson* (App. 4 Dist. 2001) 113 Cal.Rptr. 2d 625, 93 Cal. App.4th 993 (Internet statements calling plaintiff's company a "scam" were nondefamatory.)  Similarly, criticisms that the Subject Companies do not use original content are not defamatory, as they only opine on the quality of content of the Subject Companies' services.  In any case, Plaintiff is unable to prove these statements to be true or false.

In sum, Plaintiff cannot successfully prove Defendants' statements in its Blog Post were false and defamatory.

### b. Plaintiff Cannot Meet the Heightened Standard of Proof that Requires a Showing of Actual Malice When Plaintiff is a Public Figure.

Claims for libel require different standards of proof depending on whether the plaintiff is a public figure or a private citizen. Here, Plaintiff is a public figure, and as such, he must meet a heightened standard of proof for libel. Under this heightened standard, Plaintiff is required to show that Defendants made their statements with actual malice. *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 342, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974). A public figure plaintiff must show that the defendant acted with "actual malice"—that is, "knowledge that [a statement] was false" or "reckless disregard of whether it was false or not." *New York Times Co. v. Sullivan,* 376 U.S. 254, 280, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). This burden must be satisfied by clear and convincing evidence, meaning the "evidence presented is such that a reasonable jury might find that actual malice had been shown with convincing clarity." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255–57, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986);

– 13 –

*New York Times Co. v. Sullivan*, 376 U.S. 254, 285–86, 84 S. Ct. 710, 729, 11 L. Ed. 2d 686 (1964).

Plaintiff's Complaint does not allege that Mr. Toufanian is a public figure, and does not plead that Defendants' acted with actual malice.  Rather, the Complaint avers that Plaintiff is a "private citizen" that operates a "private business" that has not "achieved any appreciable degree of fame or recognition." (Complaint ¶ 25.) The evidence submitted with the present motion demonstrate that Plaintiff meets the public figure status, however, in an abundance of caution, Defendants will analyze Plaintiff's claims under both standards.

### i. Mr. Toufanian is a Public Figure for Purposes of this Litigation.

"Public figures," within the contemplation of the rule in *New York Times Co. v. Sullivan,* 376 U.S. 254, 280, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) are "those persons who…are 'involved in issues in which the public has a justified and important interest'" and "include artists, athletes, business people, dilettantes, anyone who is famous or infamous because of who he is or what he has done." *Cepeda v. Cowles Magazines and Broadcasting, Inc.* (9th Cir. 1968) 392 F.2d 417, 419, *cert. denied* 393 U.S. 840, 89 S.Ct. 117, 21 L.Ed.2d 110. Those who, by reason of the notoriety of their achievements or the vigor and success with which they seek the public's attention, are properly classed as public figures may recover for injury to reputation only on clear and convincing proof that the defamatory falsehood was made with knowledge of its falsity or with reckless disregard for the truth. *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 342, 94 S. Ct. 2997, 3008, 41 L. Ed. 2d 789 (1974).

Not only did Plaintiff fail to plead the heightened standard for a public figure in its Complaint, Plaintiff falsely asserted, despite the mountain of evidence available, that Plaintiff was <u>not</u> a public figure, presumably to avoid the difficulty of pleading actual malice. However, by virtue of his public notoriety, Mr. Toufanian is a public figure for purposes of this litigation.

– 14 –

For starters, Mr. Toufanian gained public fame as the face of his company, *I'm Shacked*, leading to coverage in national publications and a large following on social media. (Tauler Decl. ¶¶ 6-8; Exs. E-G.)  In this regard Mr. Toufanian promotes himself on social media platforms as "an American internet celebrity and entrepreneur" who is known by name amongst college students, often featured as a celebrity on websites like trendcelebsnow.com and famousbirthdays.com. (Tauler Decl. ¶¶ 2-5, Exs. A-D.) Mr. Toufanian himself has obtained two "verified" Instagram accounts (personal and business), which Instagram only provides upon its own rigorous verification that the person is a public figure. (Tauler Decl. ¶ 11, Ex. J) ("To request a verified badge, you must be a public figure, celebrity or brand and meet certain account and eligibility requirements.").

Plaintiff's substantial social media footprint, including without limitation, 1.5 million followers on his verified @imshmacked Instagram account, 250,000 followers on his @imshmacked Twitter account, 79,000 followers on his verified @AryaToufanian Instagram account, 6,000 followers on his @aryatoufanian Twitter account, and 9,870 followers on his @sensastocks Instagram account, amongst others. (Tauler Decl. ¶ 11, Ex. J)

Mr. Toufanian has leveraged his fame and notoriety to generate a following for the Subject Companies, which led to widespread coverage in the national media, culminating in the 2019 The New York Times exposé on Mr. Toufanian, which went even further in its reporting than Defendants, interviewing victims of Plaintiff's "scams." (Tauler Decl. ¶ 8; Ex. G) ("In interviews with The New York Times, students said that after they confronted the company over false promises, they were threatened with lawsuits and intimidated into silence.") Other national publications like Huffington Post published articles exposing Mr. Toufanian as a renowned scammer and litigation threatener. (Tauler Decl. ¶ 7; Ex. F.)

In light of the above, Plaintiff's averment in the Complaint that he is a "private citizen" who operates a "private business" that has not "achieved any appreciable degree of fame or recognition," is simply false. (See Complaint ¶ 25.)

In sum, Plaintiff is a public figure for the purpose of this lawsuit, and thus Plaintiff must show clear and convincing evidence that Defendants made the statements with actual malice to prevail on its libel claims. Even if the Court finds that Plaintiff is not a public figure for purposes of this case (and thus does not need to prove clear and convincing evidence of actual malice), Plaintiff still cannot prove that the statements were false and defamatory to prevail on his libel claims, as detailed in the following section.

### c. **Plaintiff Cannot Prove Defendants' Statements Proximately Caused Damages.**

Plaintiff cannot show that Defendants' statements caused his business, profession or trade damages, given Plaintiff's public reputation and repeated lawsuits against third parties who – like Defendants – did nothing more than warn consumers about Plaintiff and the Subject Companies. For example, in 2016, Mr. Toufanian claimed damages for alleged libel published on *Gawker.com*. In December 2018, Mr. Toufanian claimed damages to his reputation and business for alleged defamatory articles published on *5orry.com*. A few months after Mr. Toufanian filed the instant action claiming Defendants caused damages to his business and reputation, he alleged two other persons published defamatory statements that proximately caused him damages. *See Arya Toufanian v. Michael Wrubel*, Superior Court of the District of Columbia; Case No. 2020-SC3-000005; January 2, 2020; *see also, Arya Toufanian v. Jerry Shukes*, Superior Court of the District of Columbia; Case No. 2020-SC3-000003; January 2, 2020 (pending Anti-SLAPP Motion.) (Tauler Decl. ¶¶ 9-10; Exs. H-I.) Plaintiff's identical claims against third parties demonstrate his pattern of bad faith litigation conduct and the lack of any discernable damage to his reputation arising from Defendants' Blog Post.

**2.**   **Plaintiff Cannot Show a Reasonable Probability of Prevailing on His Libel Per Quod Claim Against Defendants.**

In addition to libel per se, Plaintiff pleads a claim for libel per quod against Defendants. Libel per se is distinguished from libel per quod in Civil Code section 45a (cf. *Slaughter v. Friedman* (1982) 32 Cal.3d 149, 153–154, 185 Cal.Rptr. 244, 649 P.2d 886):

> "A libel which is defamatory of the plaintiff without the necessity of explanatory matter, such as an inducement, innuendo or other extrinsic fact, is said to be a libel on its face. Defamatory language not libelous on its face is not actionable unless the plaintiff alleges and proves that he has suffered special damage as a proximate result thereof. Special damage is defined in Section 48a of this code."

The California Civil Code defines damages for libel per quod as those "which plaintiff alleges and proves that he has suffered in respect to his property, business, trade, profession or occupation, including such amounts of money as the plaintiff alleges and proves he has expended as a result of the alleged libel, and no other." Civ. Code, § 48a, subd. 4 (b).

Here, Plaintiff's claim for libel per quod will not prevail on the merits for the same reasons discussed above pertaining to Plaintiff's libel per se claim. Additionally, libel per quod cannot be proven because Plaintiff cannot show special damages as proximately resulting from Defendants' allegedly defamatory statements. Cal. Civil Code section 45a.  In this regard, the Complaint does not allege with particularity, as it must, how Plaintiff personally lost any money to his property, business, trade, profession or occupation as a proximate result of Defendants' Blog Post.

In sum, Plaintiff's libel per quod claim will not prevail on the merits.

**3.**   **Plaintiff Cannot Show a Reasonable Probability of Prevailing on His Claim for Violations of California Business & Professions Code § 17200, *et. seq*.**

Plaintiff's third claim alleges violations of California Bus. & Prof. Code § 17200, *et. seq.* (the "UCL" or "§17200"). Plaintiff alleges Defendants' alleged

– 17 –

defamatory statements violates unfair competition law because it allegedly constitutes unfair and unlawful business acts of practices within §17200, *et seq*. Plaintiff's UCL claim will not succeed on the merits since it is based on the same conduct as the first two claims.  The UCL claim therefore "must ... stand or fall with the underlying claims" for libel. *Medical Marijuana, Inc. v. ProjectCBD.com* (2020) 46 Cal.App.5th 869, 896; *See Hawran v. Hixson* (2012) 209 Cal.App.4th 256, 277, 147 Cal.Rptr.3d 88 (where a plaintiff's "UCL claim is derivative of [the plaintiff's] defamation cause of action, that is, it is based on the same assertedly false and defamatory press release statements, ... that cause of action stands or falls with that underlying claim.").

Plaintiff's UCL claim also fails independently because he lacks standing under the UCL, which is limited to parties that have "suffered injury in fact and has lost money or property" as a result of unfair competition. *Californians for Disability Rights v. Mervyn's, LLC,* 39 Cal. 4th 223, 227, 138 P.3d 207, 209 (2006). Thus, standing is limited to those Plaintiffs who had had business dealings with a defendant and had lost money or property as a result of the defendant's unfair business practices. *Marques v. Fed. Home Loan Mortg. Corp.,* No. 12CV1873 - IEG (MDD), 2013 WL 12114627, at *6 (S.D. Cal. Aug. 16, 2013)(citing *Clayworth v. Pfizer, Inc.* (2010) 49 Cal.4th 758, 788, 111 Cal.Rptr.3d 666, 233 P.3d 1066.)  In sum, Plaintiff does not meet the standing requirement for his UCL claim.

Even if Plaintiff did meet standing, the UCL only provides for injunctive relief and restitution. Cal. Bus. & Prof. Code § 17203. Injunctive relief is inapplicable, since the events at issue transpired long ago.  Similarly, Plaintiff cannot as a matter of law seek restitution from Defendants, because he does not allege that Defendants took "money or property that defendants took directly from plaintiff" or "money or property in which [plaintiff] has a vested interest." *Korea Supply Co. v. Lockheed Martin Corp*., 29 Cal. 4th 1134, 1146-1147, 63 P.3d 937, 947 (2003); *Fresno Motors, LLC v. Mercedes Benz USA, LLC,* 771 F3d 1119, 1135 (9th Cir. 2014). The Complaint does not allege that Defendants have any money belonging to Plaintiff whatsoever.

– 18 –

Accordingly, Plaintiff's claim for violations of the UCL are not likely to succeed.

## V.   LEAVE TO AMEND SHOULD BE DENIED.

"[S]ection 425.16 provides no mechanism for granting anti-SLAPP motions with leave to amend." *Martin v. Inland Empire Utilities Agency*, 198 Cal.App. 4th 611, 629 (2011) (italics omitted.) Courts have routinely concluded that plaintiffs may not be permitted to evade the intent of the anti-SLAPP statute by amendment once faced with an anti-SLAPP motion. *See, e.g., Simmons v. Allstate Ins. Co.,* 92 Cal. App. 4th 1068, 1073–74, 112 Cal. Rptr. 2d 397 (2001); *Jackson v. Mayweather,* 10 Cal. App. 5th 1240, 1263-1264, 217 Cal. Rptr. 3d 234 (Ct. App. 2017), *as modified* (Apr. 19, 2017); *Contreras v. Dowling,* 5 Cal.App.5th 394, 411 (2016)("a plaintiff ... may not seek to subvert or avoid a ruling on an anti-SLAPP motion by amending the challenged complaint ... in response to the motion."). Thus, the motion should be granted without leave to amend.

## VI.   DEFENDANTS ARE ENTITLED TO $22,777.50 IN ATTORNEY'S FEES AND COSTS.

Attorney's fees are mandatory for a successful anti-SLAPP motion. Cal. Civ. Proc. Code § 425.16(c)(1); *Khai v. Cty. of Los Angeles*, 730 F. App'x 408, 411 (9th Cir. 2018); *Ketchum v. Moses*, 24 Cal.4th 1122, 104 Cal. Rptr. 2d 377, 17 P.3d 735, 741 (2001). Here, Defendants are entitled to $22,777.50 in reasonable attorney's fees and costs. (Tauler Decl. ¶¶ 12-14; Ex. K.)

## VII.   CONCLUSION.

For the foregoing reasons, Defendants respectfully request that the Court strike the Plaintiff's Complaint and grant Defendants $22,777.50 in attorney's fees and costs.

Dated: June 10, 2020

TAULER SMITH LLP

By: */s/Robert Tauler*
Robert Tauler, Esq.
Attorneys for Defendants

– 19 –

**CERTIFICATE OF SERVICE**

*Toufanian v. Oreffice, et al*, Case No.: 2:19-cv-07934-DMG-SS

I hereby certify that on June 10, 2020, copies of **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S COMPLAINT PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16** were filed electronically through the Court's CM/ECG system, and served by U.S. mail on all counsel of record unable to accept electronic filing.

TAULER SMITH LLP

By: */s/Robert Tauler*
Robert Tauler, Esq.
Attorneys for Defendants

– 1 –