1   Lee M. Weinberg (Cal. SBN 131567)
2   *lee@weinberg-gonser.com*
    Shanen R. Prout, of counsel (Cal. SBN 236137)
3   *shanen@weinberg-gonser.com*
    Bryan B. Bitzer (Cal. SBN 324301)
4   *bryan@weinberg-gonser.com*
5   WEINBERG GONSER LLP
    10866 Wilshire Blvd., Suite 1650
6   Los Angeles, CA 90024
7   Phone: (424) 239-2850

8   Attorneys for Plaintiff
9   ARYA TOUFANIAN

10

11                    UNITED STATES DISTRICT COURT

12        CENTRAL DISTRICT OF CALIFORNIA—WESTERN DIVISION

13
     ARYA TOUFANIAN, an individual,         Case No.: 2:19-cv-07934-DMG-SS
14
15        Plaintiff,                        Assigned to the Hon. Dolly M. Gee
                                            Courtroom 8C
16   v.
17                                          **PLAINTIFF'S OPPOSITION TO**
     KYLE OREFFICE, an individual; GIVE     **DEFENDANTS' MOTION TO**
18   BACK MEDIA, LLC, a Georgia limited     **STRIKE THE COMPLAINT UNDER**
     liability company; and DOES 1-10,      **CAL. CODE OF CIVIL PROCEDURE**
19                                          **§ 425.16**
20        Defendants.
21                                          Date: July 24, 2020
                                            Time: 9:30 a.m.
22                                          Courtroom: 8C
23
                                            Case filed: September 12, 2019
24                                          Trial: none set
25

26

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE THE COMPLAINT
UNDER CAL. CODE OF CIVIL PROCEDURE § 425.16

# <u>TABLE OF CONTENTS</u>

*Page*

I.   INTRODUCTION ...................................................................... 1

II.  CONFERENCE OF COUNSEL ............................................... 1

III. PROCEDURAL POSTURE........................................................ 2

IV.  STATEMENT OF FACTS.......................................................... 2

    A.   The allegations against Defendants ................................... 2

        i.    Libel per se ................................................................. 5

        ii.   Libel per quod............................................................ 6

        iii.  Unfair competition in violation of California Business &
            Professions Code § 17200 et seq. ............................... 7

    B.   Defendants' evidence is improper and inadmissible ......................... 7

V.   NINTH CIRCUIT STANDARDS ON ANTI-SLAPP MOTIONS .............. 8

    A.   Defendants Make Their Motion Under a FRCP 12(b)(6) Standard ..... 9

VI.  CODE OF CIVIL PROCEDURE SECTION 425.17(c) EXCLUDES
    DEFENDANTS' COMMERCIAL SPEECH FROM ANTI-SLAPP
    PROTECTION.................................................................... 10

VII. DEFENDANTS' PUBLICATIONS WERE NOT MADE IN
    FURTHERANCE  OF THEIR RIGHTS OF FREE SPEECH — THEY
    ARE PATENTLY DEFAMATORY AND UNFAIRLY COMPETITIVE . 14

VIII. THE COMPLAINT STATES VALID CLAIMS...................................... 16

    A.   Defendants intentionally published the statements .......................... 17

    B.   Defendants made false statements of fact about Plaintiff................. 17

TABLE OF CONTENTS

C.     Defendants' publications are not privileged and are malicious .........17

D.     Plaintiff is a private figure ...............................................................17

E.     Defendants' publications are not a matter of public concern. ...........20

F.     Defendants' publications have a natural tendency to injure. .............21

G.     Plaintiff properly alleges "special" damages to support his claim for libel per quod. ..................................................................................21

H.     Plaintiff states facts showing causation of damages ........................21

I.     Plaintiff properly alleges standing for a claim of unfair competition. 21

IX.    A CONTINUANCE FOR DISCOVERY IS PROPER IF DEFENDANT LATER ASSERTS THE COURT SHOULD WEIGH EVIDENCE ...........23

X.    IF THE COURT IS INCLINED TO GRANT THE MOTION IN ANY RESPECT, PLAINTIFF ALSO REQUESTS LEAVE TO AMEND HIS COMPLAINT ........................................................................................23

XI.   DEFENDANTS' CLAIMED ATTORNEYS' FEES ARE IMPROPER AND EXCESSIVELY HIGH ....................................................................23

XII.  CONCLUSION ..................................................................................25

TABLE OF CONTENTS

# **TABLE OF AUTHORITIES**

*Page*

**FEDERAL CASES**

*Ampex Corp. v. Cargle*
      128 Cal.App.4th 1569, 1577 (2005) ........................................... 18

*Ashcroft v. Iqbal*
      556 U.S. 662 (2009) ................................................................... 10

*Bell Atlantic Corp. v. Twombly*
      550 U.S. 544 (2007) ................................................................... 10

*Chattanooga Foundry v. Atlanta*
      203 U.S. 390, 396 (1906) .......................................................... 22

*Dun & Bradstreet*
      472 U.S. 749, 758–759 (1985) ................................................... 20

*Gertz v. Robert Welch, Inc.*
      418 U.S. 323, 345 (1974) .......................................................... 18

*In Hutchinson v. Proxmire*
      443 U.S. 111, 135 (1979) .......................................................... 19

*In Wolston v. Reader's Digest Assn.*
      443 U.S. 157 (1979) ................................................................... 18

*Kearney v. Foley and Lardner*
      553 F.Supp.2d 1178, 1184-85 (S.D. Cal. 2008) ....................... 23, 24

*Makaeff v. Trump University, LLC*
      715 F.3d 254, 261-263 (9th Cir. 2013) ...................................... 15

*Manufactured Home Cmtys., Inc. v. County of San Diego*
      655 F.3d 1171, 1176 (9th Cir. 2011) ......................................... 24

*Planned Parenthood Federation of America, Inc. v. Center for Medical Progress*
      890 F.3d 828, 834 (9th Cir. 2018) ........................................... 9, 23

*Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am.*

    768 F.3d 938, 945 (9th Cir. 2014) ............................................................ 10

*Tensor Law P.C. v. Rubin*

    2019 WL 3249595, case no. 2:18-cv-01490-SVW-SK

    (C.D. Cal., Apr. 10, 2019) ......................................................................9, 23

*U.S. v. Seng Tan*

    674 F.3d 103 (1st Cir. 2012) ................................................................... 21

*Verizon Delaware, Inc. v. Covad Communications Co.*

    377 F.3d 1081, 1091 (9th Cir. 2004) ....................................................... 23

**STATE CASES**

*Brenton v. Metabolife International, Inc.*

    116 Cal.App.4th 679, 687 (2004) ............................................................ 11

*Brill Media Co., LLC v. TCW Group, Inc.*

    132 Cal.App.4th 324, 342 (2005) ............................................................ 11

*Brown v. Kelly Broadcasting Co.*

    48 Cal.3d 711, 747 (1989) ............................................................18, 19, 20

*Californians for Disability Rights v. Mervyn's, LLC*

    39 Cal.4th 223, 227 (2006) ...................................................................... 23

*Carney v. Santa Cruz Women Against Rape*

    221 Cal.App.3d 1009, 1020 (1990) ......................................................... 20

*Clayworth v. Pfizer, Inc.*

    49 Cal.4th 758, 788-89 (2010) ................................................................ 22

*Damon v. Ocean Hills Journalism Club* .......................................................... 9

    85 Cal.App.4th 468, 474 (2000) ............................................................... 9

*Demetriades v. Yelp, Inc.*

    228 Cal.App.4th 294, 305 fn.8 (2014) ................................................11, 12

ii.

*FilmOn.com Inc. v. DoubleVerify Inc.*

    7 Cal.5th 133 (2019) ................................................................. 14

*Hall v. Time Inc.*

    158 Cal.App.4th 847, 854 (2008)............................................... 22

*JAMS, Inc. v. Superior Court*

    1 Cal.App.5th 984, 993 (2016)................................................... 11

*Lundquist v. Reusser*

    7 Cal.4th 1193, 1213 (1994)...................................................... 17

*Mann v. Quality Old Time Service, Inc.*

    139 Cal.App.4th 328, 344-45 (2006).......................................... 24

*Medical Marijuana, Inc. v. ProjectCBD.com*

    46 Cal.App.5th 869, 896 (2020)................................................. 22

*Nagel v. Twin Laboratories, Inc.*

    109 Cal.App.4th 39, 47 (2003)................................................... 15

*Navellier v. Sletten*

    29 Cal.4th 82, 89 (2002)............................................................. 8

*Olaes v. Nationwide Mutual Ins. Co.*

    135 Cal.App.4th 1501, 1510-11 (2006)..................................... 15

*Park v. Board of Trustees*

    2 Cal.5th 1057 (2017) .........................................................12, 13

*Rand Resources, LLC v. City of Carson*

    6 Cal.5th 610, 621 (2019).......................................................... 14

*Smith v. Maldonado*

    72 Cal.App.4th 637, 645 (1999)................................................. 17

*Vegod Corp. v. American Broadcasting Companies, Inc.*

    25 Cal.3d 763 (1979) ................................................................. 19

ii.

TABLE OF AUTHORITIES

*Wilbanks v. Wolk*
     17 Cal.Rptr.3d 497, 507-08 (2004)................................................................ 15

**FEDERAL STATUTES**

18 U.S.C. § 371 ......................................................................................................... 21

18 U.S.C. § 1341 ....................................................................................................... 21

18 U.S.C. § 1957 ....................................................................................................... 21

**STATE STATUTES**

ARS 44-1731, et seq. ................................................................................................ 21

Cal. Bus. & Prof. Code § 17200 .............................................................................. 22

Cal. Civ. Proc. Code § 425.16(a)............................................................................. 13

Cal. Civ. Proc. Code § 425.16(b)(1) .....................................................................8, 14

Cal. Civ. Proc. Code § 425.16(c)(1) ....................................................................... 23

Cal. Civ. Proc. Code § 425.16(e).........................................................................9, 14

Cal. Civ. Proc. Code § 425.17(a)............................................................................. 11

Cal. Civ. Proc. Code § 425.17(c) ......................................................................10, 11, 13

Pennsylvania's Unfair Trade Practices and Consumer Protection Law
     73 P.S. § 201-1 et seq.......................................................................................... 21

**FEDERAL RULES**

Federal Rule of Civil Procedure 8(a)...................................................................... 10

Federal Rule of Civil Procedure 9(b)....................................................................... 9

Federal Rule of Civil Procedure 12(b)(6) .........................................................9, 10, 24

**SECONDARY SOURCES**

Judicial Council of Cal. Civil Jury Instructions (2020 edition), nos. 1700 et seq.. 17

ii.

Lawrence Tribe, American Constitutional Law (2d ed.1988) § 12–13, p. 881...... 19

Merriam Webster Dictionary……………………………………………………21

5 Witkin, Summary 11th Torts, § 709 (2020)…………………………………..20

ii.

## I.     INTRODUCTION

Having neither answered the complaint nor denied the allegations against them, Defendants ask the Court to dismiss Plaintiff's case at the pleadings stage without the parties conducting any discovery and after many months of Defendants' willful resistance to service of process.  It is inappropriate to dismiss Plaintiff's claims at this early point.  The Court should also dispense with Defendants' anti-SLAPP motion because Defendants do not satisfy their burden under the first prong of anti-SLAPP analysis.  The evidence that Defendants present is inadmissible, and insufficient to show their statements about Plaintiff were made in connection with a matter of public concern or to further a public issue, or that Plaintiff is a public figure.  The Court should deny Defendants' motion.

## II.    CONFERENCE OF COUNSEL

On June 19, 2020, Shanen Prout, counsel for Plaintiff, and Robert Tauler, counsel for Defendants, discussed the present special Motion to Strike ("Motion").  Declaration of Shanen R. Prout, ("Prout Decl."), ¶ 2.  Mr. Tauler informed Plaintiff's counsel that Defendants planned to re-file their Motion and that it would largely be the same as their prior motion to strike the Complaint.  Mr. Tauler stated he believed the Motion would be asserted to attack only the sufficiency of the claims as alleged.  Plaintiff's counsel informed Mr. Tauler that Plaintiff would oppose the Motion, and that to the extent it attacked the evidentiary support for the Complaint's allegations, Plaintiff would seek leave to conduct discovery and possibly also amend the Complaint.  *Id*.  Defense counsel wrote Plaintiff's counsel to confirm their conversation.  Prout Decl., ¶ 3, Ex. A.

After receiving the Motion, on June 27, Plaintiff's attorney wrote to defense counsel on June 27 to seek clarification of the statement at page 1, footnote 1 of the Motion concerning whether Defendants were litigating the Motion on a motion to dismiss standard.  *Id*. ¶ 4, Ex. B.  Plaintiff's counsel expressed concern that the Motion was in fact seeking to have the Court weigh evidence.  *Id*. ¶ 4, Ex. B.  Defense counsel

- 1 -

responded by assuring Plaintiff's counsel that Defendants were litigating the Motion on only a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss standard.  *Id.* ¶ 4, Ex. B.

On June 29, the parties' counsel again spoke to discuss whether to reschedule the hearing on the Motion to allow Defendants to conduct discovery for opposition to the Motion.  Defense counsel reiterated that the Motion was not seeking to test the evidence to support Plaintiff's claims and that Defendants brought the Motion under FRCP 12(b)(6) standards.  Prout Decl., ¶ 5.

## III.   PROCEDURAL POSTURE

Plaintiff Arya Toufanian filed this action on September 12, 2019.  For approximately nine months, Plaintiff attempted numerous times to serve the Summons and Complaint on Defendants, but was unsuccessful due to their refusal to accept service.  The Court granted Plaintiff's ex parte application to serve process by publication and Plaintiff completed service on May 29, 2020.

Defendants first appeared in this action by way of their Motion.  Defendants have not answered the Complaint.  The Motion neither denies any of the Complaint's allegations nor presents evidence to attempt to controvert the allegations, except to suggest that Mr. Toufanian is somehow a "public figure."  The parties have not propounded any written discovery or deposed any witnesses.  The Court has not set an initial scheduling conference.

## IV.   STATEMENT OF FACTS

In granting Plaintiff's ex parte application to serve process by publication, the Court noted: "Plaintiff appears to have stated facts sufficient to constitute a cause of action against Defendants."  (Doc. #15, 02:15-16).

### A.   <u>The allegations against Defendants</u>

This is an online defamation and unfair competition case between business competitors.  Both Plaintiff and Defendants market and provide their services through

the Internet and social media.  Defendants appears online to be in a very similar line of work as Plaintiff, and the parties share the same profile of customers and business prospects.  Complaint ("Compl.") ¶ 4.

Plaintiff is engaged in the business of providing stock-trading information and other data and investment methods to individuals and businesses through the Internet and social media.  Compl. ¶ 10.  Plaintiff operates his businesses through Instagram and other portals.  *Id*.  He is the owner and operator of a private business that is neither well-known nor has it achieved any appreciable degree of fame or recognition.  *Id*.

Defendant Give Back Media, LLC ("GBM") is a limited liability company in Georgia.  Complaint ¶ 6.  Oreffice is and was during all times relevant to the Complaint an owner, manager, and executive officer of GBM.  *Id*. ¶ 5.  Oreffice committed the acts alleged in the Complaint as an owner, manager and executive officer of GBM, and for the benefit of GBM.  *Id*.

Throughout 2018 and 2019, Defendants communicated directly with individuals and businesses through one or more of Defendants' websites published on the Internet and through social media to call Plaintiff a "scammer" and "The Douche of Wall Street."  Compl. ¶ 10.  The individuals and businesses who saw these publications are customers of Plaintiff and/or are or were interested in paying for Plaintiff's services.  *Id*.

Defendants are engaged throughout the United States in the business of providing information relating to the purchase and sale of equities.  Compl. ¶ 11.  Defendants are the owners and operators of a website located at www.quantumstocktrading.com ("Quantumstocktrading.com").  *Id*.  Defendants conduct business throughout the United States under the name Quantumstocktrading.com.  *Id*.  Defendants also conduct business throughout the U.S. through publications on the Internet and social media under the moniker "Quantum Stocks."  *Id*.  Quantumstocktrading.com's homepage proclaims: "Welcome to Quantum Stocks.  Our team has successfully demonstrated their trading abilities by helping our current members make over $100,000 in gains this

- 3 -

month alone!!"  *Id*. ¶ 12.

Quantumstocktrading.com also includes a published page titled "The Douche of Wall Street: How Arya Toufanian Scams Innocent Investors" and can be found through a link on the site's homepage with the heading "Don't Get Scammed!" and located online at https://www.quantumstocktrading.com/aryascam/.  *Id*. ¶ 13.  Among other accusations about Mr. Toufanian that Defendants have stated on Quantumstocktrading.com, Defendants published the following:

- "The owner of I'm Shmacked, Arya Toufanian, is certainly proficient at **taking money from people over the internet through elaborate, hyped-up schemes**";

- "Furthermore, he [Plaintiff] has **stolen content** from free Discord servers and posted it in his paid Discord.  The real icing on the cake, however, is **the fact that he claims these are onetime charges – which numerous, numerous members have verified to be entirely false**";

- "Not only did Arya **scam** his 'students' by charging them thousands to set up a Shopify store (something anyone can do for free in less than 5 minutes), he went a step further by **creating a *pyramid scheme* of scams** in which his students (unbeknownst to them) were effectively scamming even more people!"; and,

- "Thinking like a real scammer, Arya decided to enter into the stock advice space with his @aryastocks program (formerly @stocks), in which he uses the influence of his I'm Shmacked account to pedal [sic] his 'exclusive' stock advice.  The story of these scammy trading servers is long and illustrious.  We owe it to the public to expose these elaborate schemes such as this, *and have created our program Quantum Stocks with the goal of providing real, time-relevant, valuable trading information to our members*.  **Arya is currently charging brand-new, unsuspecting investors up to $500 (previously up to $1000+) for access to a Discord server with virtually zero activity, with promises of stock scanners and helpful admins that are virtually non-**

- 4 -

**existent**.  Each package, regardless of price, gets you access to the same chat room…
yep, you read that right: the $500 package is IDENTICAL to the $60 option."  Compl. ¶
13; Exs. 1 & 2 to the Complaint.

The above publications remain live on the Internet and accessible and viewable
by persons throughout the world.  *Id*. ¶ 15.  Defendant Oreffice authored the above
publications and caused them to be published on Quantumstocktrading.com with the
knowledge and intent that they would be seen by persons and businesses located
throughout the United States, including within California.  *Id*. ¶ 16.  Plaintiff's friends,
acquaintances, customers and likely customers, and/or work colleagues have been
exposed to and/or have read "The Douche of Wall Street: How Arya Toufanian Scams
Innocent Investors" online, on Instagram, and/or on other social media platforms.  *Id*. ¶
17.  These same persons were aware or believe that Plaintiff was in the business of
providing information about stock trading very similar to, and competitive with, those
offered by Defendants.  *Id*. ¶ 18.

In 2019, Defendants republished the same statements about Plaintiff on Facebook
and Instagram.  Compl. ¶¶ 19-23.

### i.   *Libel per se*

Plaintiff is a private citizen.  Compl. ¶ 25.  He is the owner and operator of a
private business that is neither well-known nor has it achieved any appreciable degree
of fame or recognition.  *Id*.

Defendants made the above alleged statements to persons other than Plaintiff,
through Defendants' publication of them on Defendants' website and through Facebook
and Instagram's website and software application.  Compl. ¶ 26.

The third parties who saw or read Defendants' publications reasonably
understood that they were about Plaintiff.  Compl. ¶ 27.  Those parties also reasonably
understood the publications to mean or input that Plaintiff was a fraud, Plaintiff was
committing scams to wrongfully take other persons' money, and that Plaintiff has

- 5 -

"stolen" money from others.  Compl. ¶ 28.  Defendants' statements are defamatory per se.  Compl. ¶ 29.

Defendants failed to use reasonable care under the circumstances to determine the truth or falsity of their publications.  Their publications lack evidentiary support.  Compl. ¶ 30.

As a proximate result of Defendants' defamatory publications, Plaintiff has suffered unjust embarrassment, shame, mortification, and/or hurt feelings, the loss of his reputation, the loss of business and income in excess of $75,000.  Compl. ¶ 31.  Defendants' statements have had the effect of discouraging businesses and customers from dealing with Plaintiff, by lowering his reputation and deterring the third parties from dealing with him.  *Id.*

Defendants' publications were a direct and substantial factor in causing Plaintiff's harm.  Compl. ¶ 32.

Defendants made the above alleged statements knowingly and intentionally, with malice, and without any evidence to support them or recklessly without first conducting a reasonable and sufficient investigation into whether their publications were true or false.  Defendants published their statements with a conscious disregard of Plaintiff's rights, and with the intent to vex, injure or annoy Plaintiff.  Compl. ¶ 33.

Defendants' statements have irreparably harmed and, if not enjoined, will continue to irreparably harm Plaintiff and his business reputation.  Compl. ¶ 34.  By reason of Defendants' acts, Plaintiff's remedy at law is not adequate to compensate for the injuries inflicted by Defendants.  Accordingly, Plaintiff is entitled to entry of a temporary restraining order and preliminary and permanent injunctive relief against Defendants.  Compl. ¶ 35.

### ii.    *Libel per quod*

In addition to the above alleged facts, Plaintiff's second claim states that in light of the facts and circumstances known to the readers of Defendants' publications, the

- 6 -

publications exposed Plaintiff to unjust embarrassment, hatred, contempt, ridicule or obloquy, because they challenge his business ethics, accuse him of immorality and crimes, and falsely claim he is associated or affiliated with illegal or unlawful conduct. Compl. ¶ 42.

### iii.  *Unfair competition in violation of California Business & Professions Code § 17200 et seq.*

In addition to arguing that Plaintiff's third claim for unfair competition fails with the defamation claims, Defendants argue that Plaintiff fails to allege that he suffered injury in fact and has lost money or property.  Motion, 18:15-24.  However, the Complaint alleges that Defendants' defamatory publications have caused Plaintiff to suffer the loss of business and income to Plaintiff in excess of $75,000.  Compl. ¶ 53. Defendants' statements have also discouraged existing and potential customers from dealing with Plaintiff by lowering his reputation and deterring such customers and potential customers from dealing with him.  *Id.*  Defendants have been unjustly enriched to the corresponding detriment of Plaintiff as a result of their wrongful and intentional conduct.  Compl. ¶ 54.  Under Business & Profession Code section 17203, Plaintiff is therefore entitled to restitutionary relief equal to the improper gains Defendants achieved at Plaintiff's expense.  *Id.*  Defendants' defamatory publications have directly and proximately caused Plaintiff's injuries.  Compl. ¶ 55.  Because of Defendants' conduct Plaintiff is entitled to injunctive relief on his third claim.  Compl. ¶¶ 56-57.

### B.  Defendants' evidence is improper and inadmissible.

Notwithstanding that Defendants should not present evidence on a motion to dismiss for failure to state claims, and notwithstanding that Plaintiff has objected to Defendants' evidence, the sum of it shows only that the parties have animus against each other and that it remains unresolved if Plaintiff is a public figure.  None of the statements by defendant Oreffice or his exhibits show that Defendants took any act in furtherance of their "right of petition or free speech . . . in connection with a public

- 7 -

issue" (Cal. Civ. Proc. Code § 425.16(b)(1)), and none of the declarations establish the absence of any triable issue of fact. Oreffice does not, for example, declare why he published the defamatory statements or what steps he took to ensure that an audience outside only his own customers might see the statements.

## V.    NINTH CIRCUIT STANDARDS ON ANTI-SLAPP MOTIONS

In evaluating a California anti-SLAPP motion, courts engage in a two-part inquiry. *See* Cal. Civ. Proc. Code § 425.16(b)(1). "First, a defendant 'must make an initial prima facie showing that the plaintiff's suit arises from an act in furtherance of the defendant's rights of petition or free speech.' . . . Second, once the defendant has made a prima facie showing, 'the burden shifts to the plaintiff to demonstrate a probability of prevailing on the challenged claims.'" *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1110 (9th Cir. 2003) (citations omitted). The plaintiff's burden on an anti-SLAPP motion is "comparable to that used on a motion for judgment as a matter of law." *Price v. Stossel*, 620 F.3d 992, 1000 (9th Cir. 2010).

"Only a cause of action that satisfies both prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute." *Navellier v. Sletten*, 29 Cal.4th 82, 89 (2002) (italics in text).

The first step in analyzing an anti-SLAPP motion is to determine whether the defendant successfully made "an initial prima facie showing that the plaintiff's suit arises from an act in furtherance of the defendant's rights of petition or free speech." *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1110 (9th Cir. 2003). California's anti-SLAPP statute defines such an act to include:

> (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration

or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, **(3)** any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or **(4)** any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

Cal. Civ. Proc. Code § 425.16(e).[1]

"The latter two categories require a *specific* showing the action concerns a matter of public interest; the first two categories do not require this showing." *Damon v. Ocean Hills Journalism Club*, 85 Cal.App.4th 468, 474 (2000) (italics added).

**A.    Defendants Make Their Motion Under a FRCP 12(b)(6) Standard.**

In *Planned Parenthood Federation of America, Inc. v. Center for Medical Progress*, the Ninth Circuit recently revisited the evidentiary significance of a defendant's filing of an anti-SLAPP motion in federal court.  "In defending against an anti-SLAPP motion, if the defendants have urged only insufficiency of pleadings, then the plaintiff can properly respond merely by showing sufficiency of pleadings, and there's no requirement for a plaintiff to submit evidence to oppose contrary evidence that was never presented by defendants."  *Planned Parenthood Federation of America, Inc. v. Center for Medical Progress*, 890 F.3d 828, 834 (9th Cir. 2018), *amended* 897 F.3d 1224 (9th Cir. 2018) (holding that in this situation, the Rule 12(b)(6) standard applies), *accord Tensor Law P.C. v. Rubin*, 2019 WL 3249595, at *4 (C.D. Cal., Apr. 10, 2019, No. 2:18-CV-01490-SVW-SK).

Opposing counsel has confirmed that Defendants are litigating their Motion on a Rule 12(b)(6) standard.  Prout Decl., ¶ 3, Ex. A, ¶ 4, Ex. B, ¶ 5.

Unlike Federal Rule of Civil Procedure 9(b)'s heightened fraud particularity requirement, the Complaint needs to only meet the pleading requirement of Rule 8.  A

---

[1] Defendants assert that the grounds in subdivision (e)(3) and (e)(4) are at issue in the Motion.  Motion, 07:19-24.  Plaintiff agrees.

pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party." *Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am*., 768 F.3d 938, 945 (9th Cir. 2014). In light of the U.S. Supreme Court's *Twombly* and *Iqbal* decisions, the Ninth Circuit has summarized the Rule 12(b)(6) standard as follows: "In sum, for a complaint to survive a motion to dismiss, the nonconclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv*., 572 F.3d 962, 969 (9th Cir. 2009) (internal quotation marks omitted). The plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## VI.    CODE OF CIVIL PROCEDURE SECTION 425.17(c) EXCLUDES DEFENDANTS' COMMERCIAL SPEECH FROM ANTI-SLAPP PROTECTION

California Code of Civil Procedure section 425.17(c) provides:

> Section 425.16 does not apply to any cause of action brought against a person primarily engaged in the business of selling or leasing goods or services, including, but not limited to, insurance, securities, or financial instruments, arising from any statement or conduct by that person if both of the following conditions exist:
>
> (1)    The statement or conduct consists of representations of

- 10 -

fact about that person's or a business competitor's business operations, goods, or services, that is made for the purpose of obtaining approval for, promoting, or securing sales or leases of, or commercial transactions in, the person's goods or services, or the statement or conduct was made in the course of delivering the person's goods or services.

(2) The intended audience is an actual or potential buyer or customer, or a person likely to repeat the statement to, or otherwise influence, an actual or potential buyer or customer[ ] .
. . .

The California Legislature enacted Section 425.17, which exempts certain types of actions from the scope of anti-SLAPP motions, to address a "disturbing abuse" of the anti-SLAPP motion.  Cal. Civ. Proc. Code § 425.17(a); *Brenton v. Metabolife International, Inc.*, 116 Cal.App.4th 679, 687 (2004).  Section 425.17 is intended to apply to commercial disputes.  *Brill Media Co., LLC v. TCW Group, Inc*., 132 Cal.App.4th 324, 342 (2005).

"Under the two-pronged test of section 425.16, whether a section 425.17 exemption applies is a first prong determination."  *JAMS, Inc. v. Superior Court*, 1 Cal.App.5th 984, 993 (2016).  If a plaintiff demonstrates that his claims fall within the commercial speech exemption, the anti-SLAPP analysis ends and the court must deny the motion.  *Demetriades v. Yelp, Inc*., 228 Cal.App.4th 294, 305 fn.8 (2014).

"The legislative history indicates [that the commercial speech exemption under Cal. Civ. Proc. Code § 425.17(c)] is aimed squarely at false advertising claims and is designed to permit them to proceed without having to undergo scrutiny under the anti-SLAPP statute.  Proponents of the legislation argued that corporations were improperly using the anti-SLAPP statute to burden plaintiffs who were pursuing unfair competition or false advertising claims."  *Demetriades*, 228 Cal.App.4th at 209.  The court in *Demetriades* discussed how to analyze whether commercial speech falls under the § 425.17(c) exemption:

commercial speech generally or typically is directed to an audience of persons who may be influenced by that speech to engage in a commercial transaction with the speaker or the person on whose behalf the speaker is acting. Speech in advertising format typically, although not invariably, is speech about a product or service by a person who is offering that product or service at a price, directed to persons who may want, and be willing to pay for, that product or service . . . . Economic motivation likewise implies that the speech is intended to lead to commercial transactions, which in turn assumes that the speaker and the target audience are persons who will engage in those transactions, or their agents or intermediaries . . . . [f]inally, the factual content of the message should be commercial in character.

*Id.*, 309-310 (internal quotes and citations omitted).

The Complaint is based on tortious commercial speech by Defendants who are business competitors of Plaintiff.  After Defendants mention Plaintiff in their publications, they state

Enter Quantum Stocks, a trusted resource for education and camaraderie among like-minded traders.  *It has been our duty since day one to provide our members with quality information and services at a reasonable price to foster a community of winning traders*.  We are tired of seeing innocent victims get scammed by Arya Toufanian, and will not stop spreading awareness to the matter until he is unable to scam again.

*See* Complaint, Ex. 1, p. 4.

In *Park v. Board of Trustees,* 2 Cal.5th 1057 (2017), the California Supreme Court clarified that an anti-SLAPP motion must be denied where the protected activity is incidentally involved.  A court may strike a claim only if the petitioning activity itself is the wrong complained of.  In hybrid cases where statements raise a public issue or concern that relates to or leads to challenged conduct, the issues of free speech and alleged unlawful conduct are interwoven and so are issues with the application of the SLAPP.  But a "claim may be struck only if the speech or petitioning activity itself is

the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted." *Park*, 2 Cal.5th at 1060; *see also* Cal. Civ. Proc. Code § 425.16(a).

Plaintiff's action is exempt from anti-SLAPP application because:

(1) Plaintiff's claims are brought against a person and entity engaged in the business of providing services the same or similar services to Plaintiff, i.e., investments and investment advice, thus satisfying Code of Civil Procedure section 425.17(c);

(2) "The statement or conduct [of Defendants] consists of representations of fact about a business competitor's [Plaintiff's] business operations . . . or services, that is made for the purpose of . . . promoting, or securing sales . . . of, or commercial transactions in, [Defendants'] services, or the statement or conduct was made in the course of delivering [Defendants'] . . . services," thus satisfying the condition set forth in Section 425.17(c)(1); and

(3) The intended audience for Defendants' publications at issue is an "actual or potential buyer or customer, or a person likely to repeat the statement to, or otherwise influence, an actual or potential buyer or customer," thus satisfying the condition in Section 425.17(c)(2).

Plaintiff's claims are directly based on publications mentioning and concerning Plaintiff, made by Defendants as direct business competitors of Plaintiff. Compl. ¶¶ 4, 10-13. Defendants made their publications of false facts about Plaintiff for the purpose of promoting or delivering sales of Defendants' services in competition with Plaintiff. *Id. passim*, ¶¶ 51, 52, Exs. 1 & 2 to the Complaint. And, through Defendants' publications and their platforms, they intended that the audience for the publications were Plaintiff's and Defendants' actual or potential buyers or customers of their services, or persons likely to repeat the publications to, or otherwise influence, Plaintiff's or Defendants' actual or potential buyers or customers. *Id. passim*, Exs. 1 & 2. Accordingly, the Complaint is exempt from dismissal under California's anti-SLAPP

- 13 -

statute, and therefore the Court should deny the Motion pursuant to Section 425.17(c).

## VII.  DEFENDANTS' PUBLICATIONS WERE NOT MADE IN FURTHERANCE OF THEIR RIGHTS OF FREE SPEECH — THEY ARE PATENTLY DEFAMATORY AND UNFAIRLY COMPETITIVE

In *FilmOn.com Inc. v. DoubleVerify Inc*., 7 Cal.5th 133 (2019), the Supreme Court of California defined when an act or statement is made "in connection with a public issue" under Cal. Civ. Proc. Code § 425.16(b)(1).  "In articulating what constitutes a matter of public interest, courts look to certain specific considerations, such as whether the subject of the speech or activity 'was a person or entity in the public eye' or 'could affect large numbers of people beyond the direct participants'… and whether the activity occurred in the context of an ongoing controversy, dispute or discussion … or affected a community in a manner similar to that of a governmental entity."  *FilmOn.com Inc.*, *supra*, 7 Cal.5th at 145-46.  "[I]t is *not enough that the statement refer to a subject of widespread public interest*; the statement must in some manner itself ***contribute to the public debate***."  *Id*. at 150 (italics added).  "The catchall provision [of § 425.16(e)(4)] demands some degree of closeness between the challenged statements and the asserted public interest."  *Id.*  "[A] statement is made 'in connection with' a public issue when it contributes to—that is, 'participat[es]' in or furthers—some public conversation on the issue," with "considerations of context—including audience, speaker, and purpose."  *FilmOn.com Inc.*, *supra*, 7 Cal.5th at 151-152.

"[A] matter of concern to the speaker and a relatively small, specific audience is not a matter of public interest, and … a person cannot turn otherwise private information into a matter of public interest simply by communicating it to a large number of people."  *Rand Resources, LLC v. City of Carson*, 6 Cal.5th 610, 621 (2019).  A statement is one of public interest "when the statement or conduct concerns a person or entity in the public eye, … involves conduct that could directly affect a large number of people beyond the direct participants … and … when it involves a topic of

PLAINTIFF'S OPPOSITION TO DEFENDANTS' SPECIAL MOTION TO STRIKE COMPLAINT
UNDER CAL. CODE OF CIVIL PROCEDURE § 425.16

widespread, public interest." *Id.* at 621. Further, "[a]t a sufficiently high level of generalization, any conduct can appear rationally related to a broader issue of public importance. What a court scrutinizing the nature of speech in the anti-SLAPP context must focus on is the speech at hand, rather than the prospects that such speech may conceivably have indirect consequences for an issue of public concern." *Id.* at 625. Defendants should not be allowed to immunize false or misleading statements from litigation simply by including references to vague or general public issues. *See Nagel v. Twin Laboratories, Inc*., 109 Cal.App.4th 39, 47 (2003).

Some California courts have adhered to five guiding principles to assist in determining what constitutes an issue of "public interest" under § 425.16: "(1) public interest does not equate with mere curiosity; (2) a matter of public interest should be a matter of concern to a substantial number of people, not to a relatively small, specific audience; (3) there should be some degree of closeness between the statements at issue and the asserted public interest; **(4)** the focus of the speaker's conduct should be the public interest rather than an effort to 'gather ammunition' for a private controversy; and **(5)** those charged with defamation cannot, by their own conduct, create their own defense by making the claimant a public figure." *Olaes v. Nationwide Mutual Ins. Co.*, 135 Cal.App.4th 1501, 1510-11 (2006), discussed with approval by *Asia Economic Institute v. Xcentric Ventures, LLC*, 2010 WL 11462989 *7, (C.D. Cal., April 20, 2010) (denying anti-SLAPP motion).

The Motion relies on *Makaeff v. Trump University, LLC*, 715 F.3d 254, 261-263 (9th Cir. 2013) to argue that Defendants' publications were privileged "consumer protection information" made "in connection with a public issue." *Makaeff* and the opinion it relies on are distinguishable, because unlike in those cases, Defendants' publications on their face were not "provided in the context of information helpful to consumers." *Id.* at 262. In finding the defendant had satisfied the first prong of anti-SLAPP analysis, the court in *Wilbanks v. Wolk,* 17 Cal.Rptr.3d 497, 507-08 (2004),

- 15 -

found that the defendant's "statements . . . were not simply a report of one broker's business practices, of interest only to that broker and to those who had been affected by those practices." But that is what Mr. Oreffice has done with his publications: targeted his statements to and about Mr. Toufanian and his customers.

Defendants do not satisfy their burden under the first prong of the anti-SLAPP statute to make a "*specific* showing" that Defendants' publications concern a public issue or an issue of public interest. There is no evidence that Plaintiff voluntarily injected himself into a controversy or subject of widespread, public interest. The Motion avers that Defendants' publications were made "to spread awareness of overpriced equity trading schemes, and to warn consumers of Mr. Toufanian's business practices." Motion, 04:09-10. But Defendants offer no proof for their supposition, nor does the Motion explain what vague "business practices" Defendants were attempting to warn consumers about, let alone why, if Plaintiff was engaged in merely marketing "overpriced equity trading schemes," Defendants needed to accuse him of running a "scam" and a "pyramid scheme" against Plaintiff's customers. Accusing Plaintiff of being merely greedy might have sufficed under the circumstances.

Defendants' primary intent with their publications was hardly some lofty public good or to share awareness of a widespread concern or issue. Instead, and more germane to the present proceeding, Defendants published their statements "knowingly and intentionally, with malice, and without any evidence to support them or recklessly without first conducting a reasonable and sufficient investigation into whether their publications were true or false. Defendants published their statements . . . with the intent to vex, injure or annoy Plaintiff." Compl. ¶ 33. The Court should not permit Defendants to hide their very harmful and public statements behind a veil of feigned altruism.

## VIII.  THE COMPLAINT STATES VALID CLAIMS

Under California law, to state a prima facie case of defamation, a plaintiff must

show (1) "the intentional publication" of (2) "a statement of fact" that (3) is "false," (4) "unprivileged," and (5) "has a natural tendency to injure or which causes special damage." *Smith v. Maldonado*, 72 Cal.App.4th 637, 645 (1999); *see also* Judicial Council of Cal. Civil Jury Instructions (2020 edition), nos. 1700 et seq. The Complaint satisfies each of these elements.

### A.   <u>Defendants intentionally published the statements.</u>

"Defendants knowingly and intentionally directed the defamatory publications about Plaintiff . . . to persons within the State of California, including to Plaintiff's friends, acquaintances, customers, and/or work colleagues." Compl. ¶ 2. Defendants knew, or had reason to know, that their publications would or were likely to reach and be read by California residents. *Id.*, ¶¶ 2, 16, 22.

### B.   <u>Defendants made false statements of fact about Plaintiff.</u>

Plaintiff alleges that Defendants published false statements. The "publications lack evidentiary support" (Compl. ¶ 30), and they "falsely claim Plaintiff is associated or affiliated with illegal or unlawful conduct." (Compl. ¶ 42). Defendants admit their publications assert that "Plaintiff was engaged in a 'scam' with a company called AryaStocks, including details about the pricing packages, the contents of AryaStocks and why the company is engaged in fraudulent activity." Motion, 04:03-05, 08:08-12.

### C.   <u>Defendants' publications are not privileged and are malicious.</u>

See the above discussion of free speech and anti-SLAPP analysis. Defendants allege only the privilege of constitutionally protected free speech subject to anti-SLAPP protection; they do not assert any statutory privilege. The Complaint also alleges that Defendants acted with malice. Compl. ¶¶ 33, 46. Malice can be established by "a showing that the defendant lacked reasonable grounds for belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights." *Lundquist v. Reusser*, 7 Cal.4th 1193, 1213 (1994).

### D.   <u>Plaintiff is a private figure.</u>

If plaintiff is not a public figure, then plaintiff may establish liability on proof of mere negligence, with no need to show malice. *See Brown v. Kelly Broadcasting Co.* 48 Cal.3d 711, 747 (1989). There are two types of public figures: all-purpose public figures and limited-purpose public figures.

All-purpose public figures are those persons who "occupy positions of such persuasive power and influence that they are deemed public figures for all purposes." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345 (1974) (*Gertz*). In order for a plaintiff to be deemed an all-purpose public figure, there must be "clear evidence of general fame or notoriety in the community, and pervasive involvement in the affairs of society . . . ." *Id.* at 352. Arya Toufanian is clearly not an all-purpose public figure. None of Defendants' proffered evidence even suggests this. It shows only that Mr. Toufanian is the victim of hearsay and innuendo.

Limited-purpose public figures are those who have "thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved." *Gertz*, 418 U.S. at 345. This type of public figure "*voluntarily* injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues." *Id.* at 351 (italics added). A plaintiff's involuntary involvement in a matter of public interest does not establish that he is a limited-purpose public figure. *See, e.g., In Wolston v. Reader's Digest Assn.*, 443 U.S. 157 (1979).

There are three elements to determine if someone is a limited public figure:

> First, there must be a public controversy, which means the issue was debated publicly and had *foreseeable and substantial ramifications for nonparticipants*. Second, the plaintiff must have undertaken some voluntary act *through which he or she sought to influence resolution of the public issue*. In this regard it is sufficient that the plaintiff attempts to thrust him or herself into the public eye. And finally, the alleged defamation must be germane to the plaintiff's participation in the controversy.

*Ampex Corp. v. Cargle*, 128 Cal.App.4th 1569, 1577 (2005) (quotation marks omitted)

- 18 -

(emphasis added).

The California Supreme Court has rejected the argument that simply by doing business with the public a plaintiff is no longer a private person. In *Vegod Corp. v. American Broadcasting Companies, Inc.*, 25 Cal.3d 763 (1979) (*Vegod*) plaintiffs conducted the going-out-of-business sale for City of Paris, a landmark department store in San Francisco. Defendants published statements charging plaintiffs with deceiving the public in connection with the sale. The court determined that even though the demise of City of Paris was a matter of public controversy, the plaintiffs had not thrust themselves into that controversy merely by advertising and selling goods to the public. "Criticism of commercial conduct does not deserve the special protection of the actual malice test. Balancing one individual's limited First Amendment interest against another's reputation interest, we conclude that a person in the business world advertising his wares does not necessarily become part of an existing public controversy. It follows those assuming the role of business practice critic do not acquire the First Amendment privilege to denigrate such entrepreneur." *Id*. at 770.

Criticism of a plaintiff's business practices alone cannot create a public controversy, particularly where the defendant is solely responsible for the supposed controversy. *See, e.g., In Hutchinson v. Proxmire*, 443 U.S. 111, 135 (1979) (defendant may not create his own defense by making the plaintiff a public figure). A "'fairly high threshold of public activity' is necessary to elevate a person to public figure status. (Tribe, American Constitutional Law (2d ed.1988) § 12–13, p. 881.)" *Brown v. Kelly Broadcasting Co.*, *supra*, 48 Cal.3d at 745.

As Witkin has noted

> Selling advertised goods to the public did not make plaintiffs "public figures," or make them part of an existing public controversy. And *criticism of commercial conduct does not deserve the special protection of the actual malice test*. "[T]hose assuming the role of business practice critic do not acquire the

PLAINTIFF'S OPPOSITION TO DEFENDANTS' SPECIAL MOTION TO STRIKE COMPLAINT UNDER CAL. CODE OF CIVIL PROCEDURE § 425.16

First Amendment privilege to denigrate such entrepreneur." (25 C.3d 770.) (See Carver v. Bonds (2005) 135 C.A.4th 328, 352, 37 C.R.3d 480 [podiatrist was not limited-purpose public figure with respect to newspaper's reports of his alleged false advertising; criticism of commercial conduct does not deserve special protection of actual malice test . . . .].

5 Witkin, Summary 11th Torts, § 709 (2020).

There is no evidence that Mr. Toufanian is a limited-purpose public figure. Defendants fail to present evidence of any particular controversy into which Plaintiff injected himself before filing this lawsuit. To the extent there is any controversy about Mr. Toufanian's business practices, it appears those practices concerned promoting college parties (not equities trading) and that Mr. Oreffice had a significant hand in creating that controversy, and for self-serving reasons. Defendants also fail to present evidence that Plaintiff's business practices were debated publicly or had foreseeable and substantial ramifications for parties other than Plaintiff or Defendants. The Court should find that Plaintiff remains a private figure.

### E.   Defendants' publications are not a matter of public concern.

Whether a matter is of public concern is sometimes difficult to determine. *Carney v. Santa Cruz Women Against Rape*, 221 Cal.App.3d 1009, 1020 (1990). Publishing material in the mass media creates public interest in its contents. *Brown v. Kelly Broadcasting Co.*, *supra*, 48 Cal.3d at 752. But public *interest* is not the test for determining if plaintiff must plead and prove malice by defendant. "It is speech on '"matters of public *concern*"' that is 'at the heart of the First Amendment's protection.'" *Dun & Bradstreet*, 472 U.S. 749, 758–759 (1985) (citations omitted). Whether the speech involved is of public concern is determined by analyzing its "content, form, and context . . . as revealed by the whole record." *Id.* at 761 (internal quotes omitted).

Even if Defendants' statements could arguably be considered matters of public concern, as they may loosely and generally touch on the subject of securities fraud, as

- 20 -

suggested by the Motion, viewed in full context, Defendants' speech reflects only their personal vendetta having little to nothing to do with legitimate issues of public concern. Defendants' publications are self-serving, not made in the public interest or concern.

**F.     Defendants' publications have a natural tendency to injure.**

Defendants publicly accuse Mr. Toufanian of operating a "scam" and defrauding customers through a "pyramid scheme."  The Merriam Webster Dictionary defines a "scam" as a "a fraudulent or deceptive act or operation."  *See* https://www.merriam-webster.com/dictionary/scam, accessed July 2, 2020.  Pyramid schemes are commonly associated with criminal activity.  See, e.g., *U.S. v. Seng Tan*, 674 F.3d 103, 104–105 (1st Cir. 2012) (citing 18 U.S.C. §§ 1341, 1957, 371 and affirming defendants' convictions of mail-fraud, money-laundering, and conspiracy crimes "committed in furtherance of a classic pyramid scheme" that swindled people out of money); *see also* Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1 et seq. (defining "pyramid scheme"); and Arizona statute ARS 44-1731, et seq. ("pyramid promotional scheme").[2]  There are few subjects for online publication that could more naturally injure the business reputation and integrity of a person, especially where the impugning statements are made by a business competitor and refer and relate directly to Mr. Toufanian's business.

**G.     Plaintiff properly alleges "special" damages to support his claim for libel per quod.**

Plaintiff alleges special damages at paragraphs 42, 44 and 45 of the Complaint.

**H.     Plaintiff states facts showing causation of damages.**

The Complaint alleges causation of harm.  *See* Compl. ¶¶ 31, 32, 44, 45, 53-55.

**I.     Plaintiff properly alleges standing for a claim of unfair competition.**

California's Unfair Competition Law (UCL) prohibits "any unlawful, unfair or

---

[2] The Federal Bureau of Investigation's website describes conduct that constitutes a "pyramid scheme." https://www.fbi.gov/scams-and-safety/common-scams-and-crimes/pyramid-schemes, *accessed and retrieved* June 30, 2020.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' SPECIAL MOTION TO STRIKE COMPLAINT
UNDER CAL. CODE OF CIVIL PROCEDURE § 425.16

fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising . . . ."  Cal. Bus. & Prof. Code § 17200.  "The UCL covers a wide range of conduct.  It embraces anything that can properly be called a business practice and that at the same time is forbidden by law."  *Medical Marijuana, Inc. v. ProjectCBD.com*, 46 Cal.App.5th 869, 896 (2020) (quotations and citations omitted).  The UCL borrows violations from other laws by making them independently actionable as unfair competitive practices.  *Id*.  A practice may also violate the UCL even if it is not prohibited by another statute.  *Id*.  Unfair and fraudulent practices are alternate grounds for relief.  *Id*.  Plaintiff has sufficiently pled defamation against Defendants, which is an unlawful and unfair act that supports a UCL claim.

Because the Complaint properly states defamation, Plaintiff's UCL claim stands with the alleged defamation, if the UCL claim independently alleges that Plaintiff "suffered injury in fact and has lost money or property" as a result of the unfair competition (i.e., the defamation).  *See Californians for Disability Rights v. Mervyn's, LLC*, 39 Cal.4th 223, 227 (2006).  The Complaint does so at paragraphs 53-55.  The UCL standard is satisfied when the plaintiff has "expended money due to the defendant's acts of unfair competition."  *See Hall v. Time Inc*., 158 Cal.App.4th 847, 854 (2008).  Moreover, "[a] person whose property is diminished by a payment of money wrongfully induced is injured in his property."  *Chattanooga Foundry v. Atlanta*, 203 U.S. 390, 396 (1906), *quoted by Clayworth v. Pfizer, Inc*., 49 Cal.4th 758, 788-89 (2010) (UCL case).  "Defendants' wrongful acts [of defamation] are ongoing and certain to continue.  Defendants have not removed the above alleged defamatory publications from the Internet or social media and those publications continue to be viewable to and viewed by the public."  Compl. ¶ 56.  Plaintiff will assume "costs for corrective advertising or publications to members of the public through the Internet and on social media platforms."  Compl., Prayer for Relief no. 7.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' SPECIAL MOTION TO STRIKE COMPLAINT UNDER CAL. CODE OF CIVIL PROCEDURE § 425.16

## IX.   A CONTINUANCE FOR DISCOVERY IS PROPER IF DEFENDANT LATER ASSERTS THE COURT SHOULD WEIGH EVIDENCE

The Ninth Circuit's opinion in *Planned Parenthood* unambiguously states that "discovery must be allowed" before the court rules on a defendant's factual challenges in an anti-SLAPP motion.  *Planned Parenthood*, *supra*, 890 F.3d at 834.  If Defendants reverse course and assert that the Court should weigh the Motion under Federal Rule of Civil Procedure 56, then the Court should permit Plaintiff to conduct discovery to further develop evidence to further support his claims.

## X.   IF THE COURT IS INCLINED TO GRANT THE MOTION IN ANY RESPECT, PLAINTIFF ALSO REQUESTS LEAVE TO AMEND HIS COMPLAINT

A federal court cannot grant an anti-SLAPP motion without leave to amend to the extent dismissal with prejudice "would directly collide with" the liberal policy in favor of amendments under Rule 15(a) of the Federal Rules of Civil Procedure." *Verizon Delaware, Inc. v. Covad Communications Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004), quoted by *Tensor Law P.C. v. Rubin*, 2019 WL 3249595, at *2 fn. 1 (C.D. Cal., Apr. 10, 2019, No. 2:18-CV-01490-SVW-SK) (leave to amend required when granting an anti-SLAPP motion).  If the Court grants any portion of the Motion, Plaintiff requests leave to amend his Complaint to address any pleadings deficiencies.

## XI.   DEFENDANTS' CLAIMED ATTORNEYS' FEES ARE IMPROPER AND EXCESSIVELY HIGH

A defendant who prevails on an anti-SLAPP motion "shall be entitled to recover his or her attorney's fees and costs," with limited exceptions.  Cal. Civ. Proc. Code § 425.16(c)(1).  The trial court has broad discretion, however, to determine the reasonableness of attorney fees under the anti-SLAPP statute, to be determined from a consideration of such factors as the nature of the litigation, the complexity of the issues, the experience and expertise of counsel and the amount of time involved.  *Kearney v. Foley and Lardner*, 553 F.Supp.2d 1178, 1184-85 (S.D. Cal. 2008) (applying California

PLAINTIFF'S OPPOSITION TO DEFENDANTS' SPECIAL MOTION TO STRIKE COMPLAINT UNDER CAL. CODE OF CIVIL PROCEDURE § 425.16

law).  A fees award must be reasonable in amount.  *Manufactured Home Cmtys., Inc. v. County of San Diego*, 655 F.3d 1171, 1176 (9th Cir. 2011).  The court should reduce a request for fees if the claimed hours are "excessive, redundant, or otherwise unnecessary."  *Kearney v. Foley and Lardner*, 553 F.Supp.2d at 1185.  Reasonableness also depends in part on "the success of the attorney's efforts."  *Id*.

Though Defendants characterize the Motion as of the anti-SLAPP variety, in reality it was a pre-discovery motion to dismiss at the pleadings stage under Rule 12(b)(6), for which defendants are not entitled to attorney's fees.  The Court should reject Defendants' request for attorneys' fees on this basis alone, or at least consider the true nature of the Motion in significantly reducing the amount of fees claimed.

The Court should also reduce the amount of any fees awarded based on the clearly excessive amount of time that defense counsel asserts they spent on the Motion.  *See* Declaration of Robert Tauler ¶¶ 3, 4, Ex. A (63.2 total hours).  Plaintiff's counsel spent a total of 12.5 hours in preparing all of Plaintiff's papers to oppose the Motion.  *See* Prout Decl. ¶ 6.

Moreover, Defendants improperly claim "attorney's fees" for the work of staff.  *See* Declaration of Robert Tauler ¶¶ 5, 6.  Defendants do not cite legal authority for this overhead, whether as "fees" or costs permitted under the Cal. Code of Civil Procedure or FRCP.  The Court should further strike at least $1,670 from the fees request.

Finally, if the Court grants the Motion in part and denies in part, the Court should determine if any award of fees is required and what amount is reasonable.  Defendants on anti-SLAPP motions are not entitled as matter of right to all of the attorney fees claimed or incurred on successful and unsuccessful claims merely because attorney work on those claims was overlapping.  *Mann v. Quality Old Time Service, Inc*., 139 Cal.App.4th 328, 344-45 (2006).  Instead, courts consider the defendant's relative success on the motion in achieving his objective, and appropriately reduce the fees requested.  *Id*.

- 24 -

PLAINTIFF'S OPPOSITION TO DEFENDANTS' SPECIAL MOTION TO STRIKE COMPLAINT
UNDER CAL. CODE OF CIVIL PROCEDURE § 425.16

## XII.   CONCLUSION

Based on the foregoing, plaintiff Arya Toufanian asks the Court to DENY the special motion to strike the Complaint.  Plaintiff requests an order that Defendants answer the Complaint within ten (10) days from the Court's ruling on the Motion.  If, however, the Court is inclined to grant the Motion as to any portion of the Complaint, Plaintiff requests leave to amend his pleading with at least twenty-one (21) days leave. Should the Court consider the Motion as brought on a Rule 56 basis, Plaintiff requests leave to conduct discovery to support his claims and the opportunity to further brief this Opposition, before the Court rules on the Motion.  Plaintiff anticipates he would need at least ninety (90) days to propound written discovery and account for any necessary meeting and conferring or discovery motion activity.

DATED:  July 2, 2020                              WEINBERG GONSER LLP

By:  _/s/ Shanen R Prout_____
Lee M. Weinberg
Shanen R. Prout
Bryan B. Bitzer
Attorneys for plaintiff Arya Toufanian

PLAINTIFF'S OPPOSITION TO DEFENDANTS' SPECIAL MOTION TO STRIKE COMPLAINT UNDER CAL. CODE OF CIVIL PROCEDURE § 425.16