UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 19-7934-DMG (SSx) | Date | July 16, 2021 |
| Title | *Arya Toufanian v. Kyle Oreffice et al.* | Page | 1 of 10 |

Present: The Honorable   DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

| KANE TIEN | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

**Proceedings: IN CHAMBERS—ORDER RE DEFENDANTS' MOTION TO DISMISS [37]**

On September 12, 2019, Plaintiff Arya Toufanian filed a Complaint against Defendants Kyle Oreffice and Give Back Media, LLC ("GBM") [Doc. # 1], and on October 15, 2020, Toufanian filed his First Amended Complaint ("FAC") asserting the following causes of action: (1) libel *per se*; (2) libel *per quod*; and (3) violation of California's Unfair Competition Law ("UCL") [Doc. # 33].

Oreffice and GBM filed a Motion to Dismiss ("MTD") pursuant to Federal Rule of Civil Procedure 12(b)(6) on October 29, 2020. [Doc. #37.] The MTD has since been fully briefed. [Doc. ## 38, 40.] For the reasons set forth below, the Court **GRANTS in part** and **DENIES in part** the MTD.

I.
JUDICIAL NOTICE

In support of its MTD, Defendants request that the Court take judicial notice of several materials, including websites purporting to contain biographical information about Toufanian, news articles in which Toufanian and his activities are discussed, and screen captures of his social media pages. Request for Judicial Notice ("RJN") at 4-5 [Doc. # 37-2].[1] Generally, on a Rule 12(b)(6) motion to dismiss, the court may not consider any information outside the pleadings. *See U.S. v. Corinthian Colleges*, 655 F.3d 984, 998-99 (9th Cir. 2011) (citation omitted). But Federal Rule of Evidence 201 permits the court to take judicial notice of facts that "can be accurately and readily determined from sources whose accuracy cannot be reasonably be questioned. Fed. R. Evid. 201(b). In addition, a court may consider a document not attached to the complaint as incorporated by reference if "(1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the

---

[1] All page references herein are to page numbers inserted by the CM/ECF system.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 19-7934-DMG (SSx) | Date | July 16, 2021 |
| Title | *Arya Toufanian v. Kyle Oreffice et al.* | Page | 2 of 10 |

document." *Corinthian Colleges*, 655 F.3d at 989-989; *see also United States v. Ritchie,* 342 F.3d 903, 908 (9th Cir. 2003).

The Court **GRANTS** Defendants' request to judicially notice screenshots of various websites' biographical entries on Toufanian and several news articles in *The New York Times*, *Huffington Post*, and *Business Insider* about Toufanian, as indicia of what existed in the public realm at the time, but not for the truth of any matter asserted. RJN, Ex. 1–8 [Doc. ## 37-3–37-10]; *see Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) (noticing Tweets and news articles as proof of what existed in the public realm). The November 6, 2019 *New York Times* article about Toufanian, titled "Thousands of College Kids Paid to Work for a Viral Party Kingpin. What Could Go Wrong?" is also incorporated by reference in the FAC and is key to Toufanian's unfair competition claim. RJN, Ex. 7 [Doc. # 37-9]. Because Defendants have not provided any authority by which the Court may judicially notice the number of followers of a social media account from screenshots of those accounts, the Court **DENIES** Defendants' request to notice screenshots of Toufanian's various social media accounts under Rule 201(b). RJN, Ex. 9 [Doc. # 37-11].

## II.
## FACTUAL BACKGROUND[2]

Toufanian is a California citizen engaged in the business of providing stock trading information to individual and business customers, including online through his Instagram page, @sensastocks. FAC at ¶¶ 1, 10. Defendant Oreffice is a Georgia citizen and the owner, manager, and executive officer of Defendant GBM. *Id.* at ¶ 5. Defendants are "in the business of providing information relating to the purchase and sale of equities" via the website they own and operate, www.quantumstocktrading.com (the "Website"). *Id.* at ¶ 11. Toufanian alleges that because Defendants target the same customers for similar services through the same online medium, the parties are business competitors. *Id.* at ¶ 4.

Toufanian alleges that on or around July 10, 2019, Defendants called Toufanian a "scammer" and "The Douche of Wall Street" on the Website and social media. *See id.* at ¶¶ 10–11, 13–14. Some excerpts of the blog post on the Website entitled "The Douche of Wall Street: How Arya Toufanian Scams Innocent Investors" include:

- "The owner of I'm Shmacked, Arya Toufanian, is certainly proficient at taking money from people over the internet through elaborate, hyped-up schemes";

---

[2] The Court assumes the truth of the FAC's factual allegations solely for the purpose of deciding the MTD.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 19-7934-DMG (SSx) | Date | July 16, 2021 |
|---|---|---|---|
| Title | *Arya Toufanian v. Kyle Oreffice et al.* | Page | 3 of 10 |

- "Furthermore, he [Plaintiff] has stolen content from free Discord servers and posted it in his paid Discord. The real icing on the cake, however, is the fact that he claims these are onetime charges – which numerous, numerous members have verified to be entirely false";
- "Not only did Arya scam his 'students' by charging them thousands to set up a Shopify store (something anyone can do for free in less than 5 minutes), he went a step further by creating a pyramid scheme of scams in which his students (unbeknownst to them) were effectively scamming even more people!"
- "Thinking like a real scammer, Arya decided to enter into the stock advice space with his @aryastocks program (formerly @stocks), in which he uses the influence of his I'm Shmacked account to pedal [sic] his 'exclusive' stock advice. The story of these scammy trading servers is long and illustrious. We owe it to the public to expose these elaborate schemes such as this, and have created our program Quantum Stocks with the goal of providing real, time-relevant, valuable trading information to our members. Arya is currently charging brand-new, unsuspecting investors up to $500 (previously up to $1000+) for access to a Discord [online communications] server with virtually zero activity, with promises of stock scanners and helpful admins that are virtually non-existent. Each package, regardless of price, gets you access to the same chat room… yep, you read that right: the $500 package is IDENTICAL to the $60 option. Furthermore, he has stolen content from free Discord servers and posted it in his paid Discord. The real icing on the cake, however, is the fact that he claims these are one-time charges – which numerous, numerous members have verified to be entirely false, proving that Arya is unresponsive to even the most basic of skepticisms."

*Id*. at ¶ 13; *see also* FAC, Ex. A. The article goes on to advertise Defendants' investor education services. FAC, Ex. A. The site remains active and is accessible to the public throughout the United States, including in California where Toufanian operates. FAC at ¶ 15. Toufanian is aware of friends, acquaintances, customers, and likely customers who have been exposed to or read the statements in the "Douche of Wall Street" blog post. *Id*. at ¶ 17. Defendants also advertised the blog post to Defendants' followers on Facebook and Instagram and directly reached out to Toufanian's followers and customers through Instagram. *Id*. at ¶¶ 19-22. In addition, in 2019 or 2020, Oreffice, via his Instagram handle @MalibuDogHotels, reported Toufanian's Instagram handle @ImShmacked for harassment and bullying. *Id*. at ¶ 20.

Defendants also provided information about Toufanian's alleged scams to *The New York Times*, which published an article referring to the instant lawsuit against Oreffice on November 9, 2019, entitled "Thousands of College Kids Paid to Work for a Viral Party Kingpin. What

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 19-7934-DMG (SSx) | Date | July 16, 2021 |
| Title | *Arya Toufanian v. Kyle Oreffice et al.* | Page | 4 of 10 |

Could Go Wrong?" FAC at ¶ 69; RJN, Ex. 7. The article, published two months after the Complaint was filed and incorporated by reference in the FAC, discusses Toufanian's time as the chief executive of a digital media company called I'm Shmacked and allegations that he misled numerous college students into paying for his services. RJN, Ex. 7. As a result of Defendants' statements and the *New York Times* article, Instagram closed Toufanian's account, resulting in a loss to him of roughly $1,000 dollars a day in revenue. FAC at ¶ 69.

Toufanian alleges that all of Defendants' statements regarding his business activities are false and that Defendants knew they were false and lacked evidentiary support, at the time of publication. *Id.* at ¶¶ 31, 51, 54. Many of Toufanian's customers or would-be-customers contacted him to say that they would no longer retain his services after they learned of or read Defendants' blog post. *Id.* at ¶¶ 55, 66.

Defendants now move to dismiss Toufanian's defamation and UCL claims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).³

## III.
## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) states that a defendant may seek dismissal of a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A court may grant such a dismissal only where the plaintiff fails to present a cognizable legal theory or fails to allege sufficient facts to support a cognizable legal theory. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). On a motion to dismiss, a court may consider documents attached to the complaint, documents incorporated by reference in a complaint, or documents subject to judicial notice. *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). To survive a Rule 12(b)(6) motion, a complaint must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing *Twombly*, 550 U.S. at 556). In evaluating the sufficiency of a complaint, courts must accept all

---

³ Toufanian argues that Defendants' MTD should be denied for failure to meet and confer in violation of Local Rule 7-3. Although the parties met and conferred prior to the filing of the FAC, they did not confer again prior to the filing of the instant MTD. Although this constitutes a violation of Local Rule 7-3, the Court declines to deny this fully-briefed motion on that basis, in the interest of efficiency. The Court admonishes Defendants, however, that future violations of the Local Rules may result in the imposition of sanctions.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 19-7934-DMG (SSx) | Date | July 16, 2021 |
|---|---|---|---|
| Title | *Arya Toufanian v. Kyle Oreffice et al.* | Page | 5 of 10 |

factual allegations as true. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Legal conclusions, in contrast, are not entitled to the assumption of truth. *Id.*

Should a court dismiss certain claims, "[l]eave to amend should be granted unless the district court 'determines that the pleading could not possibly be cured by the allegation of other facts.'" *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc)).

## IV.
## DISCUSSION

### A.    Defamation

To state a claim for defamation in California a plaintiff must allege: (1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and that (5) has a natural tendency to injure or causes special damage. *Taus v. Loftus*, 40 Cal. 4th 683, 720 (2007). Defendants argue that the FAC fails to allege the actual malice required for defamation when the plaintiff is a public figure, and that its statements are nonactionable statements of opinion.

#### 1.    Public figure

When the plaintiff in a defamation suit is a public figure, the plaintiff must show by clear and convincing evidence that the statements were made with "actual malice," meaning knowledge by the defendant that the statements were false or with reckless disregard for the truth. *Gertz v. Robert Welch*, 418 U.S. 323, 328 (1974); *Makaeff v. Trump Univ., Ltd. Liab. Co.*, 715 F.3d 254, 265 (9th Cir. 2013). The heightened actual malice standard recognizes that the First Amendment requires some protection of falsehood in order to protect "speech that matters" on issues of public concern, while at the same time considering the need to protect reputational interests. *Gertz*, 418 U.S. at 340-341, 349. Whether a person is a public figure is a question of law for the Court to decide. *Khawar v. Globe Internat.*, 19 Cal. 4th 254, 264 (1998). Courts within the Ninth Circuit and elsewhere have agreed that it is acceptable to determine this question at the motion to dismiss stage. *See Resolute Forest Prods. v. Greenpeace Int'l*, 302 F. Supp. 3d 1005, 1016-17 (N.D. Cal. 2017) (finding in a Rule 12(b)(6) motion to dismiss that the plaintiff was a limited purpose public figure); *Biro v. Condé Nast*, 963 F. Supp. 2d 255, 270 (S.D.N.Y.302 F. Supp. 3d at 1017 2013) (same). At the pleading stage, a determination of whether a plaintiff is a public figure is made from allegations in the complaint itself or from documents properly noticed. *Biro*, 963 F. Supp. 2d at 270, 271 n.9.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 19-7934-DMG (SSx)** | Date | July 16, 2021 |
|---|---|---|---|
| Title | ***Arya Toufanian v. Kyle Oreffice et al.*** | Page | 6 of 10 |

There are two types of public figures: (1) all-purpose public figures, and (2) limited-purpose public figures. The former are those individuals who occupy positions "of such persuasive power and influence that they are deemed public figures for all purposes." *Gertz*, 418 U.S. at 345. To show that Toufanian is an all-purpose public figure, Defendants point to the existence of various articles about Toufanian on the Internet; the FAC's allegation that he owns several businesses, including at least one based on Instagram; and the 2019 *New York Times* article incorporated by reference in the FAC that describes Toufanian's digital media company and its financial and legal woes. The Court cannot conclude on this record that Toufanian has such "general fame or notoriety" or "pervasive involvement in the affairs of society" that he may be deemed an all-purpose public figure. *Id.* at 352; *see also Makaeff* 715 F.3d at 265.

Limited-purpose public figures, by contrast, are those who thrust themselves to the forefront of a public controversy in order to influence its resolution. *Makaeff* 715 F.3d at 265. California law articulates three elements for a plaintiff to be deemed a limited purpose public figure. First, there must be a public controversy by which an issue was debated publicly and had foreseeable substantial ramifications for the public. Second, the plaintiff must have voluntarily interjected and sought to influence the issue. Finally, the defamatory statement must be "germane" to the plaintiff's voluntary participation in the controversy. *Ampex Corp. v. Cargle*, 128 Cal. App. 4th 1569, 1577 (2005). Toufanian's FAC alleges only that he owned stock trading information services. FAC at ¶ 10. He also alleges that Defendants reached out to the *New York Times* to identify Toufanian as "directly engaged" in "orchestrating fraudulent activities and business scams." *Id.* at ¶ 69. The *New York Times* article published on November 6, 2019, briefly refers to Toufanian's stock schemes, but is primarily about Toufanian's other business focused on college parties, "I'm Schmacked." These facts are not sufficient to establish at the pleading stage that Toufanian took "affirmative actions" to inject himself into an existing public controversy. *See Reader's Digest Ass'n v. Superior Court*, 37 Cal. 3d 244, 254 (1984) (holding that a person is not a public figure solely because he "happens to be involved in a controversy that is newsworthy"). For example, in *Resolute Forest Products*, the court determined at the pleadings stage that, because the specific forestry practices at issue were a matter of public concern, based on the plaintiff's own allegations about the reach and influence of its forestry operation and the "public nature" of its work, the company was a limited-purpose public figure for purposes of its participation in the forestry industry. 302 F. Supp. 3d 1005, 1017 (N.D. Cal. 2017). But "merely participating in a business venture that is subject to allegedly defamatory criticism does not meet the requirement for voluntarily participating in a controversy." *Hu & Assocs., LLC v. New Life Senior Wellness Ctr., LLC*, No. CV 16-03078-JAK (MRWx), 2017 WL 10591754, at *17 (C.D. Cal. July 7, 2017) (citing *Carver v. Bonds*, 135 Cal. App. 4th 328 (2005)). There is no evidence at this juncture that Toufanian engaged in "large scale, aggressive advertising" such that a reasonable inference can be drawn that he injected himself into a public

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 19-7934-DMG (SSx) | Date | July 16, 2021 |
|---|---|---|---|

| Title | *Arya Toufanian v. Kyle Oreffice et al.* | Page | 7 of 10 |
|---|---|---|---|

controversy arising from such advertising. *Makaeff*, 715 F.3d at 267. Thus, the Court cannot determine on the pleadings that Toufanian is a limited-purpose public figure.

Accordingly, the Court need not address whether actual malice was properly pleaded in the FAC.

### 2. Nonactionable opinion

To survive a motion to dismiss in the defamation context, a plaintiff must allege facts to show that the supposedly defamatory statement is a factual assertion and not "mere comment within the ambit of the First Amendment." *Troy Grp., Inc. v. Tilson*, 364 F. Supp. 2d 1149, 1152 (C.D. Cal. 2005) (quoting *Knievel v. ESPN*, 393 F.3d 1068, 1073-74 (9th Cir. 2005)). Statements of opinion are not actionable as defamatory unless they "imply a false assertion of fact." *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19 (1990). Even a statement couched as opinion, however, may be defamatory if it creates a factual implication. *Id.*

Under California law, whether a statement is a factual assertion, or a non-actionable opinion, is a question of law for the court to decide, and may be decided at the pleading state. *Troy Grp.*, 364 F. Supp. 2d at 1158; *Wynn v. Chanos*, 75 F. Supp. 3d 1228, 1236-37 (N.D. Cal. 2014). Statements of opinion are formed when the writer discloses all facts behind the opinion and does not imply other unstated facts, thus allowing listeners to understand that the statement is an opinion. *Id.* Statements of opinion are also "broad, unfocused, and wholly subjective." *Id.* Courts applying California law must employ a totality of the circumstances test to determine whether a statement is "susceptible of a defamatory meaning." *Baker v. L.A. Herald Exam'r*, 42 Cal. 3d 254, 261 (1986). First, the language of the statement must be reasonably understood in a defamatory sense as a statement of fact. Second, the context of the statement must be considered, including "the full content of the communication" and the knowledge of the audience. *Id.* Third, courts examine whether the statements are capable of being proved true or false. *See Wynn,* 75 F. Supp. 3d at 1238.

The totality of the circumstances here indicates that numerous statements in Defendants' blog post constitute statements of fact susceptible to defamatory meaning. Assertions that Toufanian has "stolen content," "onetime charges – which numerous, numerous members have verified to be entirely false," "scam[med] his 'students,'" and "creat[ed] a pyramid scheme," are susceptible to defamatory meaning by accusing Toufanian of illegal conduct, and are also capable of being proven true or false by examination of the allegedly stolen content, recurring charges, and overall business scheme. *See* FAC at ¶ 13; Opp. at 14-15. As for the context of the statements as a whole, the "Douche of Wall Street" blog post refers to Defendants' site Quantum

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 19-7934-DMG (SSx) | Date | July 16, 2021 |
|---|---|---|---|
| Title | *Arya Toufanian v. Kyle Oreffice et al.* | Page | 8 of 10 |

Stocks as a "trusted source for education," with a "duty since day one to provide our members with quality information." FAC, Ex. 1. The blog posts goes on to state, "We are tired of seeing innocent victims get scammed by Arya Toufanian, and will not stop spreading awareness to the matter until he is unable to scam again." *Id.* While some aspects of the blog posts may be hyperbolic, the text overall portrays Quantum Stocks—a competitor stock trading information service—as a knowledgeable source of information exposing the truth about Toufanian. A reasonable reader could therefore conclude that Defendants were asserting facts, not merely their opinion.

The blog post's formal context and earnest tone are distinguishable from those in *Global Telemedia International, Inc. v. Doe 1*, 132 F. Supp. 2d 1261, (C.D. Cal. 2001), and *ComputerXpress, Inc. v. Jackson*, 93 Cal. App. 4th 993 (2001), which involved allegedly libelous statements posted by individuals on internet message boards that were "full of hyperbole, invective, short-hand phrases and language not generally found in fact-based documents," and therefore constituted nonactionable opinions. *Glob. Telemedia Int'l, Inc.*, 132 F. Supp. 2d at 1267. Moreover, statements like "[w]hen the people who have . . . been duped into this stock realize the scam they were coaxed into, my guess is there will be hell to pay," contained explicit statements of opinion such as "my guess is." *ComputerXpress*, 93 Cal. App. 4th at 1013. The context is also distinguishable from those made in *Wynn v. Chanos*, 75 F. Supp. 3d 1228 (N.D. Cal. 2014), where the defendant, a financial investor, made statements that he was concerned "about the risk [he] was taking with clients' money" by investing in the plaintiff's company, which had investments in Macau, because "[a]lmost any company doing meaningful amounts of business in China probably could be found in violation of FCPA [Foreign Corrupt Practices Act]." *Id.* at 1236. Importantly, the defendant did not explicitly state or imply that the plaintiff's company was in violation of the FCPA, and he qualified his statement by saying that *all* companies in Macau engaged in "*legal* fraud." *Id.* His expression of concern could not also be demonstrably proven false. Accordingly, the court found that the context supported a finding that the defendant's statements were his opinion. *Id.* at 1237.

Toufanian has sufficiently alleged the publication of numerous purportedly false, defamatory, unprivileged statements in the "Douche of Wall Street" blog post. But neither party discusses the distinction between Toufanian's claim for libel *per se*, which requires only the statements to have a natural tendency to injure, and his claim for libel *per quod*, which requires allegations of special damages. *See* Cal. Civ. Code § 45a; *Barnes-Hind, Inc. v. Superior Ct.*, 181 Cal. App. 3d 377, 382 (Ct. App. 1986). The Court concludes that the statements at issue have a natural tendency to injure, and the FAC sufficiently alleges that Toufanian suffered damages to his "business, trade, profession, or occupation, including the amounts of money the plaintiff alleges and proves he or she has expended as a result of the alleged libel." Cal. Civ. Code § 48a.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 19-7934-DMG (SSx) | Date | July 16, 2021 |
|---|---|---|---|
| Title | *Arya Toufanian v. Kyle Oreffice et al.* | Page | 9 of 10 |

The Court therefore **DENIES** the MTD as to both libel claims based on Defendant's "Douche of Wall Street" blog post. But because Toufanian does not oppose dismissal of any libel claim based on Defendant's statements to Instagram from the handle @MalibuDogHotels, the Court **GRANTS, without leave to amend,** the MTD as to both libel claims to the extent they are based on such statements. *See* MTD at 17-18; FAC at ¶¶ 20-25; *Pecover v. Elec. Arts Inc.*, 633 F. Supp. 2d 976, 984 (N.D. Cal. 2009) ("[P]laintiffs have effectively conceded, by failing to address the issue in their opposition memorandum.").

**B.     Unfair competition**

The UCL prohibits "unfair competition," which is defined as "any unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. A cause of action brought under the "unlawful" prong of the UCL incorporates other laws and treats violations of those laws as unlawful business practices independently actionable under state law. *Chabner v. United Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000). An "unfair" business practice "is one that either offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *McDonald v. Coldwell Banker*, 543 F.3d 498, 506 (9th Cir. 2008) (citation and quotation marks omitted). A business practice is "fraudulent" if "members of the public are likely to be deceived." *Comm. on Children's Television v. Gen. Foods Corp.*, 35 Cal. 3d 197, 211 (1983). When a UCL claim derives from other substantive causes of action, the claim "stand[s] or fall[s]" with the substantive causes of action. *Krantz v. BT Visual Images*, 89 Cal. App. 4th 164, 178 (2001).

Toufanian predicates his unfair competition law claim on allegations that Defendants published their statements about him on Quantumstocktrading.com and elsewhere for the purpose of driving customers away from Toufanian's services and toward Defendants' competing stock trading information platforms. Furthermore, Toufanian argues that Defendants contacted *The New York Times* and Instagram and communicated the same statements directly to them. As a result of these statements, Instagram shut down Toufanian's account and denied him "access to customers and a source of revenue on Instagram." FAC at ¶ 69. Toufanian also alleges that Defendants communicated directly with his Instagram followers warning them not to purchase his services and advertising their own, and that after Defendants' blog post publication, numerous individuals contacted Toufanian to let them know they were no longer interested in purchasing his program. *Id.* at ¶¶ 19, 55, 67.

To the extent the UCL claim under the unlawful prong is predicated on Toufanian's defamation claims, that UCL claim may proceed. *See Hawran v. Hixson*, 209 Cal. App. 4th 256, 277 (2012) (noting that a UCL claim may be premised on defamation). To the extent the UCL

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 19-7934-DMG (SSx) | Date | July 16, 2021 |
|---|---|---|---|
| Title | *Arya Toufanian v. Kyle Oreffice et al.* | Page | 10 of 10 |

claim is based on Defendants' alleged actions in causing Instagram to shut down Toufanian's Instagram account, Toufanian does not allege sufficient detail to satisfy the pleading standards as to which of Toufanian's several Instagram accounts was shut down in light of the *New York Times* article. The article refers to the shutdown of the @imshmacked account, but not of @stocks and Toufanian's personal account, and does not refer to @sensastocks. *See* FAC, Ex. 9. The Opposition also does not make clear that Toufanian intends to proceed with any UCL claim besides that premised on his defamation claims. *See* Opp. at 16-17.

Accordingly, the Court **DISMISSES, with leave to amend,** the UCL claim to the extent it is premised on any unlawful, unfair, or fraudulent act besides defamation, and **DENIES** the MTD with respect to the UCL claim premised on the unlawful act of defamation.

## V.
## CONCLUSION

In light of the foregoing, the Court **GRANTS in part** and **DENIES in part** Defendants' MTD. Toufanian's libel *per se* and libel *per quod* claims based on Instagram posts from the @MalibuDogHotel handle are **DISMISSED, without leave to amend**, and his UCL claim based on any act besides defamation is **DISMISSED, with leave to amend**. His libel and UCL claims based on the allegedly defamatory "Douche of Wall Street" blog post survive.

Toufanian shall file his Second Amended Complaint, or inform the Court and Defendants that he does not intend to amend the FAC, within **21 days** after the date of this Order. Defendants shall file their response within 21 days after Toufanian files and serves his Second Amended Complaint, or they are notified of his intent to proceed on the FAC.

**IT IS SO ORDERED**.